GARY M. RESTAINO
United States Attorney
District of Arizona
VICTORIA H. GRAY
Arizona State Bar No. 037472
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
Fax: (602) 514-7760
Email: Victoria.Gray2@usdoj.gov
*Attorneys for the United States*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| Barry Goldwater Institute for Public Policy Research, | No. 2:24-cv-00314-SMM |
|---|---|
| Plaintiff, | **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| United States Department of Education, | |
| Defendant. | |

Defendant United States Department of Education, by and through undersigned counsel, hereby files this Response in Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. The parties have stipulated that the only issues to be briefed at summary judgment are the propriety of Defendant's withholdings under FOIA Exemptions 5 and 7(A). This Motion is supported by the following Memorandum of Points and Authorities, by Defendant's combined Controverting and Separate Statement of Facts and the exhibits thereto ("DSOF"), *Vaughn* index, Declarations of Christopher Madaio and Joanna L. Torres, and by all matters of record.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  SUMMARY OF ARGUMENT

Plaintiff, the Barry Goldwater Institute for Public Policy Research, seeks review of Defendant's response to Plaintiff's request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Docs. 1, 14.  Plaintiff's December 2023 FOIA request sought records concerning the Department's investigation into Grand Canyon University ("GCU") for violations of the Higher Education Act and/or federal regulations, as well as GCU's Provisional Program Participation Agreement.  Doc. 1-1 at 1.  Defendant dutifully searched for and produced all responsive documents subject to FOIA Exemption 5, 5 U.S.C. § 552(b)(5), which protects disclosure of intra- and inter-agency records protected by, among other civil discovery privileges, the deliberative process privilege, attorney-client privilege, and attorney work-product privilege, and FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A), which protects disclosure of records "compiled for law enforcement purposes . . . [that] could reasonably be expected to interfere with enforcement proceedings."  As demonstrated by the declarations of Christopher Madaio and Joanna L. Torres and the Vaughn index describing the information withheld, there is no genuine issue of material fact regarding the propriety of Defendant's withholdings under FOIA Exemptions 5 and 7(A), and Defendant is entitled to judgment as a matter of law.

## II.  FACTUAL AND PROCEDURAL HISTORY

Federal Student Aid's ("FSA") Office of Enforcement, a part of the United States Department of Education (the "Department"), among other things, conducts oversight of schools that participate or have participated in federal student aid programs that pose a risk to students and taxpayers.  DSOF at ¶ 1.  Within the Enforcement Office is the Investigations Group.  *Id.* at ¶ 2.  The Investigations Group (which includes attorney and non-attorney investigators) conducts investigations into schools' compliance with Title IV of the Higher Education Act of 1965, as amended ("HEA"), 20 U.S.C. § 1070, *et seq.*, and its implementing regulations, as well as the terms and conditions of schools' program participation agreements.  *Id.* at ¶ 3.  The attorneys within the Investigations Group provide

legal advice to others within the Investigations Group and to the Enforcement Office's leadership, as well as the Chief Operating Officer, on, among other things, matters the Investigations Group is researching or investigating for potential violations of Title IV of the HEA and its implementing regulations. *Id.* at ¶ 4. The Investigations Group also consults with attorneys in the Department's Office of the General Counsel ("OGC") for legal advice on matters related to the Investigation Group's work. *Id.*

The Investigations Group opened an investigation into GCU's compliance with Title IV of the HEA, including but not limited to, 20 U.S.C. § 1094 and its implementing regulations, including but not limited to, 34 C.F.R. §§ 668.71-74. *Id.* at ¶ 5. Between June 2022 and January 2023, the Investigations Group sought information from GCU related to GCU's marketing of graduate programs, complaints received from graduate students, students enrolled in GCU's graduate programs, and the costs students incurred. *Id.* at ¶ 6. On May 12, 2023, the Investigations Group informed GCU that it had evidence that suggested GCU made substantial misrepresentations regarding the cost, credits, and completion time required for GCU's online doctoral programs that required a dissertation. *Id.* at ¶ 7. The Investigations Group further informed GCU that an enforcement action by the Department against GCU was possible, and that such action could include a fine and limitations or conditions on GCU's participation in the federal student aid program. *Id.* GCU denied the allegations. *Id.* In August 2023, the Office of Enforcement notified GCU that the Department determined GCU violated certain provisions of Title IV of the HEA and its implementing regulations by making substantial misrepresentations to prospective and current students regarding the costs of certain doctoral programs. *Id.* at ¶ 8. The Office of Enforcement explained that the Department intended to initiate a fine action against GCU and that GCU would be issued a provisional program participation agreement containing conditions intended to address GCU's substantial misrepresentations. *Id.* On October 22, 2023, the then-Chief Operating Officer of FSA, Richard Corday, approved the initiation of a fine action against GCU. *Id.* at ¶ 9.

On October 31, 2023, the Department notified GCU that it intended to fine GCU $37.7 million dollars pursuant to 20 U.S.C. § 1094(c)(1)(F) and 34 C.F.R. §§ 668.84 and 668.71(a)(4), based on GCU's substantial misrepresentations of the costs of certain doctoral programs. *Id.* at ¶ 10. The Department informed GCU that the fine would be imposed on November 20, 2023, unless the Director of the Department's Administrative Actions and Appeals Service Group received, by that date, a request for a hearing to be conducted by the Office of Hearings and Appeals ("OHA") or written material indicating why the fine should not be imposed. *Id.*

On November 16, 2023, GCU requested a hearing to challenge the fine. *Id.* at ¶ 11. That appeal was referred to OHA and the appeal is still pending with OHA. *Id.* at ¶ 12. Because GCU appealed, and the fine has not yet been imposed, the Department has not closed its investigation into GCU. *Id.* at ¶ 13. The GCU investigation therefore remains open. *Id.*

On December 4, 2023, Plaintiff submitted the following FOIA request to Defendant, seeking:

> (1) Copies of all email communications between the individuals identified below pertaining to the Federal Student Aid's ("FSA") or the U.S. Department of Education's ("DOE") investigation and fine of Grand Canyon University ("GCU") for alleged violations of the Higher Education Act and/or federal regulations, as well as GCU's Provisional Program Participation Agreement, from January 1, 2021, to the date of this request:
>
> a. Richard Cordray
> b. Christopher Madaio
> c. Kristen Donoghue
> d. Susan Crim
> e. Lina Khan
> f. Michael Tankersley
> g. Rohit Chopra
>
> (2) Copies of records that indicate the total number of complaints submitted by members of the public to the DOE pertaining to GCU's disclosure of the cost of its doctoral programs from January 1, 2020, to the date of this request.

Doc. 1-1 at 1.

On February 14, 2024, Plaintiff filed this lawsuit to compel production of the requested records. Doc. 1.

On April 15, 2024, Defendant produced a First Interim Response to item 1 of Plaintiff's FOIA Request, which included 802 pages of responsive documents. Doc. 14 at ¶¶ 43-44; Doc. 16 at ¶ 44. Defendant withheld information pursuant to FOIA Exemptions 4, 5, 6, 7(A), and 7(C) because disclosure of the withheld information would harm the interests protected by the specified FOIA exemptions. Doc. 16 at ¶ 46.

On April 22, 2024, Defendant produced a Second Interim Response to item 2 of Plaintiff's FOIA Request, which informed Plaintiff that the Department "does not have any specific record that indicates 'the total number of complaints submitted by members of the public to [the Department] pertaining . . . GCU's disclosure of the cost of its doctoral programs from January 1, 2020, to [December 4, 2024].'" Doc. 14-22 at 2. The Department explained that while it possessed individual complaints, it does not possess any records that tracked the total number of complaints. *Id.* Plaintiff does not challenge the Department's response to Plaintiff's FOIA Request No. (2). Doc. 18 at 6-15.

On May 3, 2024, Plaintiff filed an Amended Complaint which alleged that Defendant failed to respond to Plaintiff's FOIA request within the statutory period and challenged the propriety of Defendant's withholdings. Doc. 14.

On May 7, 2024, Defendant produced an additional 80 pages of documents responsive to Plaintiff's FOIA Request No. (1). Doc. 16 at ¶ 84. Defendant withheld information pursuant to FOIA Exemptions 3, 4, 5, 6, 7(A), and 7(C) because disclosure of the withheld information would harm the interests protected by the specified FOIA exemptions. *Id.* at ¶ 91.

On July 24, 2024, the parties stipulated that the only issues to be briefed at summary judgment are the propriety of Defendant's withholdings under FOIA Exemptions 5 and 7(A). On July 26, 2024, Plaintiff filed the instant Motion for Summary Judgment alleging: (1) Defendant failed to respond to Plaintiff's FOIA request within the statutory period; and (2) Defendant did not narrowly construe the FOIA Exemptions. Doc. 18 at 6-14.

On August 28, 2024, Defendant issued an updated version of the Department's April 15, 2024, production to remove certain withholdings, to withhold certain material that the Department had inadvertently released, and to add Exemption 5 or 7(A) as an additional basis for certain withholdings that the Department originally made. DSOF at ¶ 30.

### III.     FOIA AND THE STANDARD OF REVIEW

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). To further this purpose, FOIA generally requires disclosure of agency records upon the request of any person. 5 U.S.C. § 552(a)(3)(A). "The Act expressly recognizes, however, that public disclosure is not always in the public interest and consequently provides that agency records may be withheld from disclosure under any one of the nine exemptions defined in 5 U.S.C. § 552(b)." *Baldridge v. Shapiro*, 455 U.S. 345, 352 (1982). Thus, the inclusion of these exemptions in the FOIA reflects Congress's intention to achieve "a workable balance between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency*, 493 U.S. at 152 (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966)). Accordingly, the statutory exemptions must be construed "to have meaningful reach and application." *Id.*

FOIA actions are typically resolved through motions for summary judgment brought pursuant to Fed. R. Civ. P. 56. *See Lane v. U.S. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008). Under FOIA, courts conduct a de novo review to determine whether the government properly withheld records under any of the FOIA's nine statutory exemptions. 5 U.S.C. § 552(a)(4)(B). The government bears the burden of justifying non-disclosure. *Id.* Government agencies ordinarily submit detailed declarations or affidavits, commonly referred to as a "*Vaughn*" index, that identifies the documents withheld and the FOIA exemptions claimed and provides a particularized explanation of why each document falls within the claimed exemption. *Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072,

1082 (9th Cir. 2004) (citing *Vaughn v. Rosen*, 484 F.2d 820, 823-25 (D.C. Cir. 1973)), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016). The *Vaughn* and any contemporaneously filed agency affidavits "must be detailed enough for the district court to make a de novo assessment of the government's claim of exemption." *Id.* (citing *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997)).

Courts accord agency affidavits a "presumption of good faith." *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). "If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, 'the district court need look no further'" and the agency will be entitled to summary judgment. *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987) (quoting *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1979)).

## IV.   ARGUMENT

### A.   Plaintiff is Not Entitled to Relief for Defendant's Failure to Respond to Plaintiff's FOIA Request Within the Statutory Time Period.

The statutory time limits under FOIA require an agency to determine within twenty days whether to comply with a FOIA request or, in the alternative, notify the requester of any "unusual circumstances" requiring an extension in responding to the request. *See* 5 U.S.C. § 552(a)(6)(A), (B). If the agency fails to comply, a FOIA requester can proceed directly to district court. 5 U.S.C. § 552(a)(6)(C); *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1092 (9th Cir. 2016).

Plaintiff alleges that Defendant failed to respond to Plaintiff's FOIA request within the statutory period. Doc. 18 at 6. It is unclear from Plaintiff's Motion for Summary Judgment, however, what relief Plaintiff requests for Defendant's failure to respond within the statutory period. Doc. 18 at 6-8. Defendant concedes that this Court has jurisdiction over this matter, *see* U.S.C. § 552(a)(6)(C), but denies that Plaintiff is entitled to any relief for Defendant's failure to respond within the statutory period.

The Ninth Circuit has recognized two separate claims that a FOIA requester can bring against an agency under FOIA. *Hajro*, 811 F.3d at 1102-03. The first is known as a "specific FOIA request claim," wherein "a plaintiff attacks a specific agency action for (1) 'improperly' (2) 'withheld' (3) 'agency records.'" *Id.* at 1103 (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)). After the agency produces all non-exempt documents in a specific FOIA request claim and "the court confirms the agency's proper invocation of an exemption, the specific FOIA claim is moot because the injury has been remedied." *Id.*; *see also Papa v. United States*, 281 F.3d 1004, 1013 & n.42 (9th Cir. 2002) ("[T]he production of all nonexempt material, 'however belatedly,' moots FOIA claims." (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982))).

A FOIA requester may also assert that an agency has engaged in a "pattern or practice" of violating the FOIA time limits. *Hajro*, 811 F.3d at 1092, 1103. In a "pattern or practice" claim, the FOIA requester alleges that "an agency policy or practice will impair the party's lawful access to information in the future." *Id.* at 1103. An agency can rebut a pattern or practice claim by demonstrating that "'exceptional circumstances' justify its untimeliness and due diligence in remedying the violation." *Id.* at 1092 (citing 5 U.S.C. § 552(a)(6)(C)).

Here, Plaintiff alleges only a specific FOIA request claim—that Defendant improperly withheld agency records. Doc. 14 at 1. Plaintiff does not allege a pattern or practice claim. Doc. 14. Accordingly, because Defendant produced all non-exempt documents (as described *infra*) Plaintiff's FOIA action is moot. *See Hajro*, 811 F.3d at 1092; *Perry,* 684 F.2d at 125; *Hart v. U.S. Dep't of Health & Hum. Servs.*, 676 F. Supp. 2d 846, 848 (D. Ariz. 2009) ("It is undisputed that Defendant failed to respond to Plaintiffs' request within 20 days. However, an action to compel the production of documents under the FOIA is mooted, and appropriately dismissed, when the agency in control of the requested documents delivers them to the plaintiff.").

**B.    Defendant Properly Withheld Records Under the FOIA Exemptions.**

**1.    Defendant Properly Withheld Records Under Exemption 5.**

Defendant withheld, pursuant to 5 U.S.C. § 552(b)(5), portions of documents that contain investigative and other internal communications, internal memoranda, communications with attorneys representing Defendant, and attorney work-product. DSOF at ¶¶ 16-24.

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 "entitles an agency to withhold from the public 'documents which a private party could not discover in litigation with the agency.'" *Maricopa Audubon Soc'y*, 108 F.3d at 1092 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975)). It therefore covers the deliberative process privilege, attorney-client privilege, and attorney work-product privilege. *Id.*

**i.    Deliberative Process Privilege**

"The purpose of the deliberative process privilege 'is to prevent injury to the quality of agency decisions' by ensuring that the 'frank discussion of legal or policy matters' in writing, within the agency, is not inhibited by public disclosure." *Id.* (quoting *Sears, Roebuck & Co.*, 421 U.S. at 150-51). To fall within the "deliberative process" privilege of Exemption 5, the materials at issue must be "'predecisional' in nature *and* must also form part of the agency's 'deliberative process.'" *Id.* at 1093 (emphasis in original) (quoting *Sears, Roebuck & Co.*, 421 U.S. at 151-52).

A document is "predecisional" if it is "prepared in order to assist an agency decisionmaker in arriving at his decision." *Id.* (quoting *Assembly of the State of Cal. v U.S. Dep't of Com.*, 968 F.2d 916, 920 (9th Cir. 1992)). Predecisional documents include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* And a predecisional document is part of the "deliberative process," where "the disclosure of [the] materials would expose an agency's decisionmaking process in

such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.*

As identified with greater specificity in the *Vaughn* index, the Department withheld information under the deliberative process privilege. The information withheld under the deliberative process privilege included: (1) strategic discussions concerning the GCU investigation that preceded any final agency decision (a) finding a violation of federal law, regulations, or program participation agreements or (b) enforcing federal law, regulations, or a program participation agreement when violated; (2) email communications concerning the Department's statements to the press on the GCU investigation, which predated the final statements to the press; (3) email communications discussing the Department's potential response to communications from GCU's counsel, which predated the Department's formal responses to GCU; (4) discussion of other FSA matters involving GCU, such as GCU's recertification of its Program Participation Agreement ("PPA"), conditions placed on GCU's provisional PPA, and an open program review of GCU, which predated the Department's decision to offer GCU a provisional PPA with conditions relating to the findings in the GCU Investigation as well as the finalization of that provisional PPA; and (5) email communications between the Department and the FTC regarding the GCU investigation wherein they exchanged information and recommendations related to the investigation that predated the initiation of the fine action against GCU. DSOF at ¶ 18. The release of the aforementioned would "would expose [the] agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Maricopa Audubon Soc'y*, 108 F.3d at 1093; *see also* DSOF at ¶ 19-20.

### ii.   Attorney-Client Privilege

The attorney-client privilege protects confidential communications between a client and an attorney made for the purpose of obtaining or providing legal advice. *See United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862–63 (D.C. Cir. 1980). The attorney-client privilege "extends to

agencies . . . to the extent the agency is consulting its attorney 'as would any private party seeking advice to protect personal interest.'" *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1086 (N.D. Cal. 2015) (quoting *Ctr. for Bio. Diversity v. Office of Mgmt. & Budget*, 625 F. Supp. 2d 885, 892 (N.D. Cal. 2009)); *Rollins v. United States Dep't of State*, 70 F. Supp. 3d 546, 552 (D.D.C. 2014) (noting that in the governmental context, the client may be the agency and the attorney may be an agency lawyer). To invoke the privilege, an agency must demonstrate that the document it seeks to withhold (1) involves "confidential communications between an attorney and his client" and (2) relates to "a legal matter for which the client has sought professional advice." *Jud. Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 267 (D.D.C. 2004).

To support claims of attorney-client privilege, the agency must, in its *Vaughn* index, "show that these documents involved the provision of specifically legal advice or that they were intended to be confidential and were kept confidential." *Our Children's Earth Found.*, 85 F. Supp. 3d at 1087 (quoting *Nat'l Resources Def. Council v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1104 (C.D. Cal. 2005)).

Here, the *Vaughn* index describes that the information withheld pursuant to the attorney-client privilege was related to the giving or receiving of legal advice and would reveal communications of a confidential nature. *See Martin*, 278 F.3d at 999. The information the Department withheld under the attorney-client privilege contained legal advice from OGC attorneys or the attorneys of FSA's Investigations Group or solicitations of legal advice from such attorneys. DSOF at ¶ 21. The release of information protected by the attorney-client privilege would have a chilling effect on the relationship between OGC attorneys and other Department staff and between FSA Investigations Group attorneys and FSA staff whom they advise on legal matters pertaining to FSA investigations. *Id.* at ¶ 22. If such communications and documents were released to the public, Department staff would be deterred from consulting Department attorneys for legal advice on matters on which they are working and would not feel comfortable divulging to such attorneys all potentially relevant information regarding the matter on which advice is

sought. *Id.*

### iii. Attorney Work-Product Privilege

Attorney work-product protects "against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" as well as "documents prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). If a document is covered by the attorney work-product privilege, the government need not segregate and disclose its factual contents. *See Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997) ("Any part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5.").

In determining whether the work product privilege applies, courts consider "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998). When agency lawyers act "as prosecutors or investigators of suspected wrongdoers," courts have applied a specific claim requirement to identify when the risk of litigation "was sufficiently in mind." *Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Justice Exec. Office for United States Attorneys*, 844 F.3d 246, 255 (D.C. Cir. 2016). The specific claim test is met if "the documents at issue had been prepared by government lawyers in connection with active investigations of potential wrongdoing." *In re Sealed Case*, 146 F.3d at 885; *Coastal States Gas Corp.*, 617 F.2d at 866 ("[T]he agency must establish in its affidavits or indexes the fact that a specific claim had arisen, was disputed by the [offending party], and was being discussed in the memorandum."); *Kent Corp. v. NLRB*, 530 F.2d 612, 623 (5th Cir. 1976) (noting the prospect of litigation was identifiable because of specific claims that had already arisen in the NLRB investigation into unfair labor practices). By contrast, when lawyers act "as legal advisors protecting their agency clients from the possibility of future litigation" no specific claim need be contemplated for the work product privilege to apply. *In re Sealed Case*, 146 F.3d at 885.

The Department anticipated litigation with GCU as early as May 12, 2023—the date the Investigations Group informed GCU it was considering a possible enforcement action. DSOF at ¶ 23. The Department therefore withheld privileged attorney work-product, such as documents and communications drafted by FSA Investigations Group attorneys and OGC attorneys after FSA reasonably anticipated litigation with GCU regarding the GCU investigation. *Id.* The release of information protected by the work-product privilege would dissuade Department attorneys from recording and sharing their mental impressions and advice regarding matters that are reasonably likely to lead to litigation, which would compromise the Department's ability to make informed decisions about such matters. *Id.* at ¶ 24. Additionally, the release of this information would reveal information relevant to the Department's litigation strategy in the ongoing appeal, undermine the Department's ability to defend its position, and put the Department at an unfair disadvantage, as this information would not be available to GCU as a member of the public. *Id.*

### 2. Defendant Properly Withheld Records Under Exemption 7(A).

FOIA Exemption 7(A) authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Here, Plaintiff alleges that Exemption 7(A) does not apply because Defendant "is not a law enforcement agency," and the "requested documents were not compiled for law enforcement purposes." Doc 18 at 11-13. Plaintiff misunderstands the applicable law.

### i. The Records Were Compiled for Law Enforcement Purposes.

The types of "law enforcement" proceedings to which Exemption 7(A) is applicable includes not only criminal actions, but also civil actions, as well as administrative proceedings. *See Rugiero v. DOJ*, 257 F.3d 534, 550 (6th Cir. 2001) (explaining that Exemption 7 applies "not only to criminal enforcement actions, but to records compiled for civil enforcement purposes as well"); *Vento v. IRS*, 714 F. Supp. 2d 137, 148 (D.D.C. 2010) (declining to narrow Exemption 7 to protect only criminal law enforcement records

because there "is no warrant in the law for that distinction and the federal courts have rejected it"); *Envtl. Prot. Servs. v. EPA*, 364 F. Supp. 2d 575, 588 (N.D. W. Va. 2005) (stating that disclosure of records compiled as part of EPA's investigation into violations of its Toxic Substance Control Act "would prematurely reveal the EPA's case . . . in the administrative proceeding that is currently pending").

To meet the threshold requirement—that the "records or information [were] compiled for law enforcement purposes"—the agency "need only 'establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law.'" *Bagwell v. U.S. Dep't of Educ.*, 183 F. Supp. 3d 109, 118 (D.D.C. 2016) (quoting *Blackwell v. F.B.I.*, 646 F.3d 37, 40 (D.C. Cir. 2011)) (records compiled as part of Department's program review of Penn State University for violation of the Clery Act (a part of the Higher Education Act) constituted records "compiled for law enforcement purposes"); *see also Long v. ICE*, 149 F. Supp. 3d 39, 49 (D.D.C. 2015) (concluding that the "withheld records easily qualify as records or information 'compiled for law enforcement purposes,'" where the records "were prepared to effectuate the agencies' law enforcement responsibilities").

As part of its mission, the Investigations Group conducts investigations into schools' compliance with Title IV of the HEA, 20 U.S.C. § 1070, *et seq*, and its implementing regulations, 38 C.F.R. § 668, *et seq*. DSOF at ¶ 3. Institutions participating in Title IV student financial aid programs have program participation agreements with the Department and must comply with the laws and regulations of the Title IV program. *Id.* If an institution participating in Title IV "has engaged in substantial misrepresentation of the nature of its educational program, its financial charges, or the employability of its graduates," the Department may impose several types of sanctions, including fines and limitations. 20 U.S.C. §§ 1094(c)(1)(F), (c)(3); 34 C.F.R. § 668.71. The Department may impose civil penalties for each violation the institution commits of certain statutory and regulatory requirements. 20 U.S.C. § 1094(c)(3)(B); 34 C.F.R. § 668.84.

Here, the Department records at issue concern the Department's investigation into GCU for violations of Title IV and its implementing regulations. DSOF at ¶¶ 5, 10. Accordingly, the records were "compiled for law enforcement purposes." *See Bagwell*, 183 F. Supp. 3d at 118 (D.D.C. 2016); *see also See Rugiero*, 257 F.3d at 550.

> ii.  **The Enforcement Proceedings Against GCU are Pending and Release of the Withheld Information Would Harm Defendant.**

Having met this threshold requirement, "the government must show that (1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm." *Manna v. DOJ*, 51 F.3d 1158, 1164 (3d Cir. 1995) (citing *Robbins Tire & Rubber Co.*, 437 U.S. at 224). "Foremost among the purposes of this Exemption is to prevent 'harm [to] the Government's case in court.'" *Robbins Tire & Rubber Co.*, 437 U.S. at 224 (quoting S. Rep. No. 813, 89th Cong., 1st Sess. (1965)).

Plaintiff contends that "the investigation and fine have concluded, and therefore, there is no pending action against GCU." Doc. 18 at 13. Plaintiff is incorrect. The Department's investigation into GCU remains open as GCU's fine is on appeal (DSOF at ¶¶ 11-13). *See Kansi v. U.S. Dep't of Just.*, 11 F. Supp. 2d 42, 44 (D.D.C. 1998) (finding plaintiff's pending motion for new a trial "a pending law enforcement proceeding for purposes of FOIA"); *Pawlowski v. United States*, No. CV 19-3740 (TJK), 2023 WL 8272203, at *3 (D.D.C. Nov. 14, 2023), *aff'd*, No. 23-5286, 2024 WL 3299614 (D.C. Cir. July 2, 2024) (explaining that Plaintiff's appeal challenging the denial of his motion for a new trial is a pending law enforcement proceeding under FOIA); *Basey v. Dep't of the Army*, No. 4:16-CV-00038-TMB, 2018 WL 8798586, at *9 (D. Alaska May 14, 2018) ("Although Plaintiff's trial has concluded and Plaintiff is currently awaiting sentencing, the Court finds that Exemption 7(A) remains applicable at least pending the conclusion of sentencing and the statutory period for a notice of appeal."); *Stein v. S.E.C.*, 266 F. Supp 3d 326, 346-47 (D.D.C. 2017) (finding Exemption 7(A) applicable to documents which would "reveal agency analyses, thoughts, impressions, or what the agency found important

in an investigation" because it was "'reasonably likely' to interfere with the ongoing . . . litigation"). Therefore, a relevant enforcement proceeding—GCU's appeal—remains pending. DSOF at ¶¶ 11-13.

"The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses." *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000); *see also Robbins Tire & Rubber Co.*, 437 U.S. at 224 ("In originally enacting Exemption 7, Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their case.").

Defendant withheld from Plaintiff information concerning Defendant's open investigation into GCU. DSOF at ¶¶ 11-13; *see also Vaughn* index. This information, if released, would clearly place Defendant at a disadvantage in defending against GCU's appeal (DSOF at ¶ 26). *See Robbins Tire & Rubber Co.*, 437 U.S. at 224. And Plaintiff seems to seek these documents to impact that proceeding, as Plaintiff alleged in multiple press releases that the Department of Education "coordinate[d] [with] various federal agencies" to "intentionally target[] [GCU] . . . based on extraordinarily thin allegations" (DSOF at ¶ 15). *See Pawlowski*, 2023 WL 8272203, at *3 (finding Exemption 7(A) applicable where Plaintiff sought documents to "'exonerate' himself through his appeal"). Even if Plaintiff does not seek the documents through FOIA to exonerate GCU on appeal, release of the information to Plaintiff is considered a release to all, and there is no mechanism available to contain the harm. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("It must be remembered that once there is disclosure, the information belongs to the general public."). Defendant therefore properly invoked Exemption 7(A).

**3. Defendant Complied with FOIA's Segregability Requirement.**

The FOIA requires the agency to disclose "any reasonably segregable portion of a

record . . . after deletion of the portions which are exempt." 5 U.S.C. 552(b). Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, non-exempt information has been disclosed, the agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). The agency may do so by offering affidavits or a *Vaughn* index with "reasonably detailed descriptions of the withheld portions of the documents and alleging facts sufficient to establish and exemption." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008).

Here, the Department processed all records identified after an adequate and reasonable search for responsive records and released all reasonably segregable, non-exempt information from records responsive to Plaintiff's request. DSOF at ¶ 31. The Department carefully examined each record and conducted an extensive review of each record at issue and identified information that could be released and information that was exempt from disclosure because of the deliberative process privilege, the attorney work-product privilege, or the attorney-client privilege, or because the information was compiled for law enforcement purposes and related to an ongoing enforcement proceeding, as well as other FOIA exemptions that Plaintiff does not challenge. *Id.* After an extensive review of the records at issue, the Department has determined that there is no further non-exempt information that can be reasonably segregated and released without revealing information exempt from disclosure under Exemption 5 and/or 7(A). *Id.* Therefore, the Department has satisfied the FOIA's segregability requirement.

V.     **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that Plaintiff's Motion for Summary Judgment be denied, that Defendant's Cross-Motion for Summary Judgment be granted, and that judgment be entered in Defendant's favor.

1 | RESPECTFULLY SUBMITTED August 30, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*/s/ Victoria H. Gray*
VICTORIA H. GRAY
Assistant United States Attorney
*Attorneys for the United States*