GARY M. RESTAINO
United States Attorney
District of Arizona
VICTORIA H. GRAY
Arizona State Bar No. 037472
Assistant U.S. Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
Fax: (602) 514-7760
Email: Victoria.Gray2@usdoj.gov
*Attorneys for the United States*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barry Goldwater Institute for Public Policy Research, | No. 2:24-cv-00314-SMM |
| Plaintiff, | **DEFENDANT'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| United States Department of Education, | |
| Defendant. | |

    Defendant United States Department of Education, by and through undersigned counsel, hereby files this Reply in Support of its Cross-Motion for Summary Judgment. Doc. 22.

## I.    SUMMARY OF ARGUMENT

    Plaintiff, the Barry Goldwater Institute for Public Policy Research, seeks review of Defendant's response to Plaintiff's request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Doc. 14. Plaintiff's December 2023 FOIA request sought records concerning the Department's investigation into Grand Canyon University ("GCU") for violations of the Higher Education Act and/or federal regulations, as well as GCU's Provisional Program Participation Agreement. Doc. 1-1 at 1. Defendant dutifully searched

1    for and produced all responsive documents subject to FOIA Exemption 5, 5 U.S.C.

2    § 552(b)(5), which protects disclosure of intra- and inter-agency records protected by,

3    among other civil discovery privileges, the deliberative process privilege, attorney-client

4    privilege, and attorney work-product privilege, and FOIA Exemption 7(A), 5 U.S.C.

5    § 552(b)(7)(A), which protects disclosure of records "compiled for law enforcement

6    purposes . . . [that] could reasonably be expected to interfere with enforcement

7    proceedings." As demonstrated by the declarations of Christopher Madaio and Joanna L.

8    Torres, and the *Vaughn* index describing the information withheld, there is no genuine

9    issue of material fact regarding the propriety of Defendant's withholdings under FOIA

10   Exemptions 5 and 7(A), and Defendant is entitled to judgment as a matter of law. Doc. 23-

11   1; Doc. 23-2; Doc. 23-3.

12   **II.    ARGUMENT**

13   **A.    Plaintiff is Not Entitled to Declaratory Relief for Defendant's Failure to**
14   **Respond to Plaintiff's FOIA Request Within the Statutory Time Period.**

15   Plaintiff alleges that Defendant failed to respond to Plaintiff's FOIA request within

16   the statutory period. Doc. 18 at 6. Although it was unclear from Plaintiff's Motion for

17   Summary Judgment what relief Plaintiff requests for Defendant's failure to respond within

18   the statutory period (Doc. 18 at 6-8), Plaintiff now requests in its Reply that the Court order

19   "a declaration regarding the Department's FOIA violation on that issue" (Doc. 26 at 3).

20   Defendant again denies that Plaintiff is entitled to any relief for Defendant's failure to

21   respond within the statutory period.

22   The Ninth Circuit has recognized two separate claims that a FOIA requester can

23   bring against an agency under FOIA. *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d

24   1086, 1102-03 (9th Cir. 2016). The first is known as a "specific FOIA request claim,"

25   wherein "a plaintiff attacks a specific agency action for (1) 'improperly' (2) 'withheld' (3)

26   'agency records.'" *Id.* at 1103 (quoting *Kissinger v. Reporters Comm. for Freedom of the*

27   *Press*, 445 U.S. 136, 150 (1980)). A FOIA requester may also assert that an agency has

28   engaged in a "pattern or practice" of violating the FOIA time limits. *Id.* at 1103.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In a "pattern or practice" claim, the FOIA requester alleges that "an agency policy or practice will impair the party's lawful access to information in the future." *Id.* at 1103 (quoting *Payne Enters., Inc. v. U.S.*, 837 F.2d 486, 491 (D.C. Cir. 1988)).

Here, neither Plaintiff's Amended Complaint nor Plaintiff's Motion for Summary Judgment allege a pattern or practice violation. Doc. 14; Doc 18. Despite this, Plaintiff alleges in its Reply—for the first time—that Defendant "has engaged in a pattern or practice of violating FOIA's time limits." Doc. 26 at 3. Accordingly, Plaintiff's pattern or practice claim is not properly before the Court, and fails. *See Earth Island Inst. v. U.S. Forest Serv.*, 87 F. 4th 1054, 1073 (9th Cir. 2023) ("Since [plaintiff] did not plead this claim in its complaint, it was not properly before the district court, and fails."); *Quick v. U.S. Dep't of Commerce, Nat'l Inst. of Standards and Tech.*, 775 F. Supp. 2d 174, 183 (D.D.C. 2011) (explaining that plaintiff's "pattern or practice" claim "fails at the outset for the simple reason that nothing even remotely resembling a 'pattern or practice' claim appears within the four corners of [plaintiff's] Complaint").

Plaintiff alleges only a specific FOIA request claim—that Defendant improperly withheld agency records. Doc. 14 at 1. Plaintiff contends that Defendant's production of the documents does not moot Plaintiff's request for declaratory relief. Doc. 26 at 3. However, the cases Plaintiff cites in support of this assertion are inapposite. Doc. 26 at 3-5.

The case *Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 135-36 (D.D.C. 2018) is distinguishable because the plaintiff in *Muckrock* alleged a policy or practice claim and the court granted declaratory relief noting that the "CIA's email policy violates the FOIA." Likewise, *Owen v. U.S. Immigr. & Customs Enf't*, No. CV 22-0550-DSF (AFMX), 2023 WL 9470904, at *8 (C.D. Cal. Jan. 12, 2023), which Plaintiff cites for the proposition that "declaratory judgment is an appropriate way to address FOIA delays" (Doc. 26 at 5), is also distinguishable because there, the court specified that "[c]ourts grant declaratory judgment in the FOIA context only where there is a *practice or policy* of delayed disclosure that seems likely to repeat itself – rather than an isolated incident." 2023 WL 9470904, at

*8 (emphasis added).  The court in *Owen* therefore denied plaintiff's request for declaratory relief against the agency because the agency's "behavior has not formed a pattern sufficient to warrant declaratory relief."  *Id.*

Lastly, Plaintiff cites *Transgender Law Center v. Immigr. & Customs Enf't*, 46 F.4th 771, 778 (9th Cir. 2022), for the proposition that declaratory relief is appropriate where the agency fails to timely respond to a FOIA request (Doc. 26 at 3).  However, in that case the plaintiff appealed the district court's grant of summary judgment to the agencies on the issues of compliance with plaintiff's FOIA request, adequacy of the search and *Vaughn* indices, and application of exemptions to the documents at issue.  *Id.*  The issue of the district court's grant of declaratory relief in favor of plaintiff was not before the Court of Appeals, which, consequently, offered no guidance on whether such relief was appropriate. *Id.*

Accordingly, because Defendant produced all non-exempt documents (Doc. 22 at 2-6), Plaintiff's FOIA action is moot.  *See Hajro*, 811 F.3d at 1092, 1103; *Papa v. United States*, 281 F.3d 1004, 1013 & n.42 (9th Cir. 2002) ("[T]he production of all nonexempt material, 'however belatedly,' moots FOIA claims." (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982)))  Moreover, because Plaintiff has not alleged a pattern or practice claim, declaratory relief is inappropriate.  *See Owen*, 2023 WL 9470904, at *8; *Shapiro v. U.S. Dep't of Just.*, 507 F. Supp. 3d 283, 336 (D.D.C. 2020) ("Courts in this circuit grant declaratory relief when they find that an agency has a policy or practice that violates FOIA, so long as there is at least some chance that the agency might continue to apply the policy in the future."); *Navigators Ins. Co. v. U.S. Dep't of Just.*, 155 F. Supp. 3d 157, 168 (D. Conn. 2016) ("[I]n the FOIA context, courts have granted declaratory judgments where a plaintiff has shown that an agency engaged in a pattern or practice of delayed disclosure and that it is possible the violations will recur with respect to the same requesters.").  The Court should deny Plaintiff's request for declaratory relief.

**B.**    **Defendant Properly Withheld Records Under the FOIA Exemptions.**

**1.**    **Defendant Properly Withheld Records Under Exemption 5.**

1    Defendant withheld, pursuant to 5 U.S.C. § 552(b)(5), portions of documents that
2    contain investigative and other internal communications, internal memoranda,
3    communications with attorneys representing Defendant, and attorney work-product.  Doc.
4    23 at ¶¶ 16-24.

5    FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency
6    memorandums or letters which would not be available by law to a party other than an
7    agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Exemption 5 "entitles an
8    agency to withhold from the public 'documents which a private party could not discover
9    in litigation with the agency.'"  *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d
10   1089, 1092 (9th Cir. 1997) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148
11   (1975)).  It therefore covers the deliberative process privilege, attorney-client privilege,
12   and attorney work-product privilege.  *Id.*

13   First, Plaintiff argues that Exemption 5 does not apply to information related to the
14   decision to initiate a monetary fine against GCU because it was not a "policy decision."
15   Doc. 26 at 6-7.  However, as Plaintiff correctly notes in its Reply (Doc. 26 at 6), the
16   deliberative process privilege covers "documents reflecting advisory opinions,
17   recommendations, and deliberations that are part of a process by which government
18   *decisions* and policies are formulated." *Reps. Comm. for Freedom of the Press v. FBI*, 3
19   F.4th 350, 361 (D.C. Cir. 2021) (emphasis added) (citation omitted).  Exemption 5
20   therefore applies to records related to the Department's decision to initiate a fine action
21   against GCU.

22   Second, Plaintiff argues Exemption 5 does not apply to documents that contain
23   "facts relayed by agency counsel."  Doc. 26 at 7.  However, factual material is protected
24   under the deliberative process privilege "[w]here either the disclosure of the manner of
25   selecting or presenting facts would expose the deliberative process, or where facts are
26   'inextricably intertwined' with 'policy-making processes.'"  *Nat'l Wildlife Fed. v. U.S.*
27   *Forest Serv.*, 861 F.2d 1114, 1119 (9th Cir. 1988) (quoting *Ryan v. Dep't of Justice*, 617
28   F.2d 781, 790 (D.C. Cir. 1980)).  "Factual materials . . . would likewise be exempt from

1    disclosure to the extent that they reveal the mental processes of decisionmakers." *Id.*

2    As explained in the Department's *Vaughn* index (Doc. 23-3), many of the

3    documents at issue contain: (1) mental impressions and summary of relevant facts related

4    to the GCU investigation, the disclosure of which would expose the deliberative process in

5    issuing a finding and determining what, if any, actions to take in the GCU investigation

6    (FOIA Docs. Nos. 4, 7); (2) recommendations on Department action which include

7    selective facts to support such recommendations, the disclosure of which would expose the

8    deliberative process in investigating and taking enforcement action (FOIA Docs. Nos. 6,

9    39, 112); (3) legal conclusions by Department attorneys which include selective facts to

10   support such legal conclusions and recommendations, the disclosure of which would

11   expose the deliberative process by providing insights into the attorneys' decision-making

12   processes (FOIA Docs. Nos. 50, 54, 113); and (4) agency officials' summary and

13   impressions of, among other things, certain events in the investigation, the disclosure of

14   which would expose the deliberative process by revealing such officials' predecisional

15   views on the investigation (FOIA Docs. Nos. 96, 98).

16   Third, Plaintiff argues the Department applied Exemption 5 to "communications

17   with outside parties," and that such communications are not covered by the deliberative

18   process privilege, attorney-client privilege, or attorney work-product privilege.  Doc. 26 at

19   7-8.  As shown in the *Vaughn* index, the Department withheld portions of internal emails

20   between Department employees, which were not exchanged with non-Executive branch

21   individuals/entities.  Doc. 23-3, FOIA Docs. Nos. 29, 32, 69, 70, 72, 73, 75, 82-86, 88, 91,

22   121-122, 124, 126, 130.  The emails at issue are email threads—that is, they are a series of

23   emails grouped together in a single conversation, with the most recent email appearing at

24   the top of the thread.  Although these email threads may contain copies (i.e., forwards) of

25   emails exchanged with non-executive branch personnel, the emails at issue are wholly

26   internal, that is, solely between Department employees or other executive branch

27   individuals/entities.  Additionally, the Department withheld under Exemption 5 Madaio's

28   summary and mental impressions of certain phone calls or communications with GCU's

1    counsel, the disclosure of which would discourage Department employees from sharing

2    their impressions of communications with external parties in the decision-making process.

3    Doc. 23-3, FOIA Docs. Nos. 108, 120.    Lastly, Plaintiff misidentifies the following

4    documents as having been withheld under Exemption 5: 103, 131-138.

5        Fourth, Plaintiff argues that records related to the Department's press activities

6    should be released, arguing they are not policy decisions covered by Exemption 5.    Doc.

7    26 at 8.    In *Transgender Law Center*, the Ninth Circuit remanded to direct the release of

8    certain draft press statements where "the agencies withheld draft statements without

9    adequately explaining how they reveal a deliberative process."    46 F.4th at 783.    By

10   contrast, here, as explained in the *Vaughn* index, some of the documents Plaintiff identifies

11   were emails to the then-Chief Operating Officer of FSA containing items for his approval

12   and read-ahead materials, which contained, among other things, "recommendations

13   concerning a variety of policy issues" and "informational updates on ongoing policy work."

14   Doc. 23-3, FOIA Docs. Nos. 1-3.    Further, other documents, or portions thereof, were

15   withheld because they contain "strategic information concerning the status of" or "strategic

16   discussions" on the GCU investigation.    Doc. 23-3, FOIA Docs. Nos. 61, 101, 128.    Such

17   materials are distinguishable from those documents in *Transgender Law Center* because

18   they are not simply "deliberations regarding how best to address public relations matters

19   or possible responses to an inquiry received from an outside entity."    46 F. 4th at 783

20   (citation omitted).    Instead, they are part and parcel of the Department's internal

21   deliberations on decisions to be made in GCU investigation and fine action—such

22   communications were therefore not merely responsive to outside inquires or deliberations

23   on how to best address the public.    *See id.*

24       Regardless of whether the deliberative process privilege applies to the majority of

25   emails in FOIA Doc. No. 94, such emails were withheld under the attorney-client privilege

26   (Doc. 23-3, FOIA Doc. No. 94); as such, the withheld materials need not be related to a

27   "policy decision."    Although the Department does not concede that the emails in FOIA

28   Doc. 94 are not protected by the deliberative process privilege, the Department is no longer

1    withholding under the deliberative process privilege most of the emails relating to the draft

2    press statements withheld under Exemption 5 in FOIA Doc. No. 94.  Instead, such emails

3    are only being withheld under the attorney-client privilege.  However, the Department is

4    still withholding the October 9, 2023, emails of Benjamin Miller and Christopher Madaio

5    in FOIA Doc. No. 94 under the deliberative process privilege.[1]  *See* Exhibit 1, Revised

6    *Vaughn* index (revisions in redline), FOIA Doc. No. 94.

7         Fifth, Plaintiff argues the subject lines of emails should be produced because they

8    are "not draft documents."  Doc. 26 at 8.  The Department did not withhold the subject

9    lines of emails because they are "draft documents."  Rather, as explained in the

10   Department's *Vaughn* index, the Department withheld the subject lines of certain emails

11   because they would reveal deliberative material, attorney-client communications, and/or

12   attorney-work product, including: (1) specific recommendations and/or strategy under

13   discussion; (2) specific aspects of the GCU investigation being discussed by agency

14   attorneys; (3) the nature of the issues for which FSA sought legal advice; and (4) the nature

15   of the strategic discussions.  Doc. 23-3, FOIA Docs. Nos. 5, 11-12, 15, 19, 20-24, 26-27,

16   31, 33, 35, 37, 42, 45-46, 48, 58, 60, 68, 76-79, 99, 119, 125, 128.

17        Sixth, Plaintiff argues the Department applied Exemption 5 to post-decisional

18   documents.  Doc. 26 at 8.  Although the then-Chief Operating Officer of FSA, Richard

19   Corday, approved the initiation "[t]he fine action against GCU on October 22, 2023, "[t]he

20   October 31, 2023, letter that initiated the fine action against GCU represents the

21   Department's final decision to initiate the fine action and the amount of the initiated fine,

22   as well as the Department's formal, final reasoning for initiating the fine action."  Doc.

23   23-2 at ¶ 13.  Therefore, as explained in the Department's *Vaughn* index, the emails at issue

24   are not post-decisional because they predate the Department's October 31, 2023, letter

25   which represents the final agency decision.  Doc. 23-3, FOIA Docs. Nos. 118-120, 123-

26

27   —————————————————

28   [1] The October 9, 2023, emails of Miller and Madaio in FOIA Doc. No. 94 are on the page
     Bates stamped "REVISED ED 24-00550-F (Apr. 15, 2024)_000420".

130.  Additionally, Plaintiff has misidentified many of the emails as concerning the fine action when instead they concern condition B of GCU's PPPA, specifically, deliberations about a letter received from GCU's counsel, and how to respond to it (FOIA Docs. Nos. 121-122, 124, 126).  Finally, many portions of the documents at issue were also withheld under the attorney-client privilege and/or attorney-work product privilege; as such, the withheld material need not be "predecisional."

Finally, Plaintiff raises no arguments disputing the Department's withholdings under the attorney-client privilege and attorney work-product privilege.  As explained in the Department's *Vaughn* index, various documents, or portions thereof, were withheld under the attorney-client privilege and/or attorney work-product privilege in addition to the deliberative process privilege.  Doc. 23-3.

## 2.  <u>Defendant Properly Withheld Records Under Exemption 7(A).</u>

FOIA Exemption 7(A) authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).

First, Plaintiff again contends that the Department's "investigation is no longer open."  Doc. 26 at 9.  Plaintiff is incorrect.  The Department's investigation into GCU remains open as GCU's fine is on appeal (Doc. 23 at ¶¶ 11-13).  *See Kansi v. U.S. Dep't of Just.*, 11 F. Supp. 2d 42, 44 (D.D.C. 1998) (finding plaintiff's pending motion for new a trial "a pending law enforcement proceeding for purposes of FOIA").

Citing a Ninth Circuit case involving the Court's review of a § 1983 claim, Plaintiff alleges that the release of the Department's investigatory materials would not harm the Department's position in the hearing requested by GCU before the Office of Hearings and Appeals because "new evidence is not permitted on appeal" (Doc. 26 at 9) (citing *Tucker v. Seattle Hous. Auth.*, 670 F. App'x 488, 489 (9th Cir. 2016)).

But courts examining the application of Exemption 7(A) have agreed that "[b]ecause the potential for interference remains even when a case is on appeal, [an agency]

is permitted to withhold law enforcement records until all reasonably foreseeable proceedings stemming from that investigation are closed." *Stein v. S.E.C.*, 358 F. Supp. 3d 30, 34-35 (D.D.C. 2019); *see also Pawlowski v. United States*, No. CV 19-3740 (TJK), 2023 WL 8272203, at *3 (D.D.C. Nov. 14, 2023) (finding potential for harm where plaintiff did not dispute that he sought the documents to impact an appellate proceeding); *Basey v. Dep't of the Army*, No. 4:16-CV-00038-TMB, 2018 WL 8798586, at *9 (D. Alaska May 14, 2018) ("Although Plaintiff's trial has concluded and Plaintiff is currently awaiting sentencing, the Court finds that Exemption 7(A) remains applicable at least pending the conclusion of sentencing and the statutory period for a notice of appeal.").

And as noted in the Department's Motion for Summary Judgment, Plaintiff seems to seek these documents to impact the administrative proceeding, as Plaintiff alleged in multiple press releases that the Department "coordinate[d] [with] various federal agencies" to "intentionally target[] [GCU] . . . based on extraordinarily thin allegations" (Doc 22 at 16; Doc. 23 at ¶ 15). But courts have held that Exemption 7(A) applies even if the requestor's purpose is to exonerate it. *See Pawlowski*, 2023 WL 8272203, at *3 (finding Exemption 7(A) applicable where the plaintiff sought documents to "'exonerate' himself through his appeal"). Even if Plaintiff does not seek the documents through FOIA to exonerate GCU on appeal, release of the information to Plaintiff is considered a release to all, and there is no mechanism available to contain the harm. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("It must be remembered that once there is disclosure, the information belongs to the general public."). Defendant therefore properly invoked Exemption 7(A).

Second, Plaintiff contends the Department applied Exemption 7(A) to "several records without any justification," citing only FOIA Doc. No. 30. Doc. 26 at 10. However, the Department described the basis for withholding FOIA Doc. No. 30 and similar documents in paragraph 31 of the Declaration of Christopher Madaio. Doc. 23-1 at ¶ 31.

Third, Plaintiff argues that the Department applied Exemption 7(A) to communications with the FTC, and that the "Department cannot claim Exemption 7(A) on

behalf of another agency . . . on the basis that disclosure of the records might interfere with that agency's separate investigation." Doc. 26 at 10. As described in *Vaughn* index, the Department withheld emails between Christopher Madaio and an FTC attorney regarding FSA's GCU investigation because it contains strategic discussions related to *both* investigations. Doc. 23-3, FOIA Docs. Nos. 12, 35, 62.

And as explained in the Declaration of Christopher Madaio, the Department also withheld a document under Exemption 7(A) because the release of such document could "interfere with the Investigation Group's ability to fully and fairly consider potential liabilities that, if imposed, could result in money being repaid to the Department" in a separate, unrelated investigation, not because of any interference with the GCU investigation. Doc. 23-1 at ¶ 31; Doc. 23-3, FOIA Doc. No. 30.

The Department is removing the Exemption 7(A) redactions from the March 5, 2023, email of Christopher Madaio contained in FOIA Doc. No. 13,[2] because that email relates to enforcement work against an institution unrelated to GCU, and such enforcement work is neither ongoing nor related to the GCU investigation. *See* Exhibit 1, Revised *Vaughn* index (revisions in redline), FOIA Doc. No. 13.

## V.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that Plaintiff's Motion for Summary Judgment be denied, that Defendant's Cross-Motion for Summary Judgment be granted, and that judgment be entered in Defendant's favor.

RESPECTFULLY SUBMITTED October 18, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*/s/ Victoria H. Gray*
VICTORIA H. GRAY

---

[2] The March 5, 2023, email of Madaio in FOIA Doc. No. 13 is on the page Bates stamped "REVISED ED 24-00550-F (Apr. 15, 2024)_000042."

Assistant United States Attorney
*Attorneys for the United States*