**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Barry Goldwater Institute for Public Policy Research,

                    Plaintiff,

v.

United States Department of Education,

                    Defendant.

No. CV-24-00314-PHX-SMM

**ORDER**

    This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 18) and Defendant's Cross-Motion for Summary Judgment (Doc. 22). The Motions are fully briefed. (See Docs. 18; 19; 22; 23; 26; 27; 50; 51; 52; 55; 56). The Barry Goldwater Institute for Public Policy Research's ("Plaintiff" or "the Institute") filed this action for declaratory and injunctive relief pursuant to the Freedom of Information Act ("FOIA") against the United States Department of Education ("Defendant or "the Department) after the Department failed to produce records relating to its record $37.7 million fine against Grand Canyon University ("GCU").[1] The Department has since disclosed the documents not subject to an exemption and submitted five different Vaughn indexes. The Court's task is to discern whether the Department's belated disclosure was "adequate" under FOIA. For the following reasons, the Court grants in-part and denies in-part the cross-motions for summary judgment.

---

[1] The Institute does not represent GCU nor is it involved in any other litigation between the Department and GCU.

## I.    BACKGROUND

The Institute seeks review of the Department's response to the Institute's December 4, 2023 request under the FOIA, 5 U.S.C. § 552, for records relating to the Department's $37.7 million fine against GCU for substantial misrepresentations of some of its PhD programs. (Doc. 18). The Institute's FOIA request followed the Department's October 31, 2023, announcement of a $37.7 million fine GCU. This was the largest fine ever imposed against a university in the United States. (Id. at 1-2). The Institute sought records regarding communications about how the Department developed and coordinated the enforcement against GCU. (Id.)

In its Motion, the Institute argues that the Department: (1) failed to comply with the FOIA's statutory deadline, (2) did not meet its burden of proof to establish that certain FOIA exemptions apply, and (3) did not reasonably segregate portions of records that are exempt from those that are not subject from exemption. (Doc. 18). In response, the Department contends that it processed all records identified after an adequate and reasonable search for responsive records and released all reasonably segregable, non-exempt information from records responsive to the Institute's request. (Doc. 19). The Department withheld information under the deliberative process privilege, the attorney work-product privilege, the attorney-client privilege, or because the information was compiled for law enforcement purposes and related to an ongoing enforcement proceeding. (See id.)

### 1.  The Department of Education's Investigation

The Department is an agency of the federal government within the meaning of the FOIA. (Docs. 19 at 2; 23 at 1). Federal Student Aid's ("FSA") Office of Enforcement, a part of the United States Department of Education, among other things, conducts oversight of schools that participate or have participated in FSA programs that pose a risk to students and taxpayers. (Doc. 23 at 4). The Enforcement Office contains an Investigations Group (which includes attorney and non-attorney investigators) that conduct investigations into schools' compliance with Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. §§ 1070, et seq., and its implementing regulations, as

well as the terms and conditions of schools' program participation agreements. (Id.)

The attorneys within the Investigations Group provide legal advice to others within the Investigations Group and to the Enforcement Office's leadership, as well as the Chief Operating Officer, on, among other things, matters the Investigations Group is researching or investigating for potential violations of Title IV of the HEA and its implementing regulations. (Id. at 4-5). The Investigations Group also consults with attorneys in the Department's Office of General Counsel ("OGC") for legal advice on matters related to the Investigation Group's work. (Id. at 5).

The Investigations Group opened an investigation into GCU's compliance with Title IV of the HEA, including but not limited to, 20 U.S.C. §1094 and its implementing regulations, including but not limited to, 34 C.F.R. § 668.71-74. (Id.) Between June 2022 and January 2023, the Investigations Group sought information from GCU related to GCU's marketing of graduate programs, complaints received from graduate students, students enrolled in GCU's graduate programs, and the costs students incurred. (Id.)

On May 12, 2023, the Investigations Group informed GCU that it had evidence that suggested GCU made substantial misrepresentations regarding the cost, credits, and competition time required for GCU's online doctoral programs that required a dissertation. (Id.) The Investigations Group further informed GCU that an enforcement action by the Department against GCU was possible, and that such action could include a fine and limitations or conditions on GCU's participation in the federal student aid program. GCU denied the allegations. (Id.)

In August 2023, the Office of Enforcement notified GCU that the Department determined GCU violated certain provisions of Title IV of the HEA and its implementing regulations by making substantial misrepresentations to prospective and current students regarding the costs of certain doctoral programs. (Id.) The Office of Enforcement explained that the Department intended to initiate a fine against GCU and that GCU would be issued a provisional program participation agreement containing conditions intended to address GCU's substantial misrepresentations. (Id.)

On October 22, 2023, the then-Chief Operating Officer of FSA, Richard Cordray

("Mr. Cordray"), approved the initiation of the fine against GCU. (Id. at 6). On October 31, 2023, the Department notified GCU that it intended to fine GCU $37.7 million dollars pursuant to 20 U.S.C. § 1094(c)(1)(F) and 34 C.F.R. § 668.84 & § 668.71(a)(4), based on GCU's substantial misrepresentations of the costs of certain doctoral programs. (Id.) The Department informed GCU that the fine would be imposed on November 20, 2023, unless the Director of the Department's Administrative Actions and Appeals Service Group received, by that date, a request for a hearing to be conducted by the Office of Hearings and Appeals ("OHA") or written material indicating why the fine should not be imposed. (Id.) On November 16, 2023, GCU requested a hearing to challenge the fine. GCU's hearing to challenge the fine (the "appeal"), was referred to OHA. (Id.) The appeal was never ruled upon.

On October 31, 2023, the Department issued a press release announcing a record fine of $37.7 million against Grand Canyon University ("GCU") for substantial misrepresentations about the costs of certain doctoral programs. (Doc. 19 at 3).

**2.  The Goldwater Institute's Public Records Request**

On December 4, 2023, the Goldwater Institute submitted an expedited public records request to the Department through its online portal and email ("the Request"). (Id. at 3-4). The Request sought communications pertaining to fines under the HEA as it relates to GCU. (Id. at 3). The Request sought the following documents and records:

(1) Copies of all email communications between the individuals identified below pertaining the Federal Student Aid's ("FSA") or the U.S. Department of Education's ("DOE") investigation and fine of Grand Canyon University ("GCU") for alleged violations of the Higher Education Act and/or federal regulations, as well as GCU's Provisional Program Participation Agreement, from January 1, 2021 to the date of this request:
  a.  Richard Cordray
  b.  Christopher Madaio
  c.  Susan Crim
  d.  Lina Khan
  e.  Michael Tankersley
  f.  Rohit Chopra
(2) Copies of records that indicate the total number of complaints submitted by members of the public to the DOE pertaining to GCU's disclosure of the cost of its doctoral programs from January 1, 2020 to the date of this request.

(Id.) On December 4, 2024, the ED FOIA Service Center, Office of the Secretary, acknowledged the Request and assigned the Request the number, 24-00550-F ("the Acknowledgement"). (Id. at 4). The Acknowledgement denied expedited processing and advised of the Department's average request processing time of 185 business days. (Id.) The Acknowledgement did not state any unusual circumstances that would permit an extension to the FOIA's 20-business day timeline, nor did it provide a date by which a determination was expected. (Id.)

On December 6, 2024, the Institute sent a letter to the Department notifying it that it must comply with the FOIA's statutory timeline. (Id.) On December 13, 2023, the Department sent the Institute an email stating that it conducted a search that located approximately 7,000 records that were potentially responsive to the Institute's Request and the fees for the search were $2,099.34 ("Fee Estimate"). (Id.) The Fee Estimate advised that until the Department received notification of the Institute's willingness to pay the search fees, the pending search and review of responsive documents would cease. (Id. at 5). On December 20, 2023, the Institute sent a response to the Department's December 19, 2023, letter. (Id.) On December 22, 2023, the Department granted the Institutes' fee waiver. (Id.)

On January 12, 2024, the Institute sent a letter to the Department demanding a response to the Request. (Id.) On January 16, 2024, the Department sent an email of its position on the timeline for issuing a response stating an "initial determination" would be provided the same day. (Id.) On January 16, 2024, the Department sent the Institute a "20 Day Status Notification" letter ("Status Notification"). (Id.) The Status Notification alleged that there were unusual circumstances requiring an extension to the 20-day statutory timeline. (Id.) The unusual circumstance was that the Request would result "in a large amount of responsive records" and as such the Department would not be able to respond to the Request within the 20-day time period. (Id.) The Status Notification did not give an estimated completion date for when the Request would be completed. (Id.) The Status Notification stated that the average processing time for a request was 185 days. (Id. at 6).

The Department did not issue a response indicating a determination of whether it would comply with the public records request within 20 business days, as required by the FOIA. (Id.) However, the Department completed production of records responsive to the Institute's Request on May 7, 2024. (Doc. 23 at 3). This was approximately six months after the Institute's first request.

On February 14, 2024, the Institute filed its Complaint for Injunctive and Declaratory Relief ("Complaint") in this Court to compel the Department to comply with the statutory timeframe and produce the requested records. (Doc. 19 at 6). On April 15, 2024, the Department emailed the Institute an interim response and documents responsive to item one of the Request ("First Interim Response"). (Doc. 52 at 6). The First Interim Response included 802 pages, bates labeled ED 24-00550-F (Apr. 15, 2024)_000001 to ED 24-00550-F (Apr. 15, 2024)_000802 and withheld in whole or in part portions of the responsive documents according to FOIA Exemptions 3, 4, 5, 6, 7(A), and 7(C). (Id.) The Department did not provide any further basis regarding the information withheld or the basis for the withholding. (Id.)

On April 22, 2024, the Department emailed the Institute a second interim response stating there were no responsive records for item two of the Request ("Second Interim Response"). (Id. at 7). The Department stated that it has

> in its possession accounts from doctoral students complaining about issues related to the cost, time, or number of credits required to obtain a degree at GCU. Those accounts came from written complaints submitted to the Department, oral complaints made to Department employees, and borrower defense to repayment applications from students alleging related substantial misrepresentations by GCU.

(Doc. 23 at 4). The parties agree that the Department does not have any specific record that indicates "the total number of complaints submitted by members of the public to [the Department] pertaining. . .GCU's disclosure of the cost of its doctoral programs from January 1, 2020 to [December 3, 2024]." (Id.)

The Department withheld information pursuant to FOIA Exemptions 5 and 7(A). (Id. at 6). Pursuant to FOIA Exemption 5, the department withheld information under the deliberative process privilege, attorney-client privilege, and attorney work-product

privilege. (Id. at 7). As identified with greater specificity in the Vaughn index, the information withheld under the deliberative process privilege included:

> (1) strategic discussions concerning the Department's investigation into GCU which preceded any final agency decision (a) finding a violation of federal law, regulations, or program participation agreements or (b) enforcing federal law, regulations, or a program participation agreement when violated; (2) email communications concerning the Department's statements to the press on the GCU investigation, which preceded the final statements to the press; (3) email communications discussing the Department's potential response to communications from GCU's counsel which preceded the Department's formal responses to GCU; (4) discussion of other FSA matters involving GCU, all of which preceded the Department's decision to offer GCU a provisional PPA with conditions relating to the findings in the GCU Investigation as well as the finalization of that provisional PPA; and (5) email communications between the Department and the FTC regarding the GCU investigation wherein the parties exchanged information and recommendations related to the investigation which preceded the initiation of the fine action against GCU.

(Id.) The Institute disputes that the withheld information properly qualifies for the deliberative process privilege exemption. (Doc. 18 at 11).

The Department contends that because the majority of the information protected by the deliberative process privilege pertains to pre-decisional, deliberative discussions concerning the GCU investigation, the release of such information would expose the Department's decision-making process and discourage Department staff from discussing their recommendations and views in writing, confuse the public to the extent such material reflects the reasoning or preliminary decisions not relied on by the Department in making its final decisions in the GCU investigation, and chill inter-agency coordination on investigative matters thereby leading to less effective enforcement of federal law. (Doc. 23 at 7-8). The Institute argues that the Department's argument is speculative and conclusory without specific analysis. (See Doc. 18 at 10-11).

Additionally, the Department argues that the release of pre-decisional, deliberate internal discussions concerning communications with GCU or other matters involving GCU, including recertification of GCU's provisional PPA, also would expose the Department's decision-making process and discourage staff from discussing their

recommendations and views in writing and create confusion about the Department's decisions. (Doc. 23 at 8). The Institute argues that the deliberative process privilege relates to policy decisions and therefore, there would not be any of the speculative effects that the Department imagines. (Doc. 51 at 8).

Further, the Department withheld information under the attorney-client privilege, which contains legal advice from OGC attorneys or the attorneys of FSA's Investigations Group, solicitations of legal advice from such attorneys; or relays legal advice that had been provided by OGC attorneys or identifies areas on which Department staff felt legal guidance or advice from OGC attorneys were necessary. (Doc. 23 at 8). The Institute does not challenge the Department's withholding under the attorney-client privilege. (See Doc. 51).

The Department also withheld information under the attorney work-product privilege, such as documents drafted by FSA Investigations Group attorneys and OGC attorneys after FSA reasonably anticipated litigation with GCU regarding the GCU Investigation. (Doc. 23 at 9). The Department anticipated litigation with GCU as early as May 12, 2023—the date the Investigations Group informed GCU it was considering possible enforcement action. (Id.) The Institute does not contest the Department's withholding under the attorney work-product privilege. (See Doc. 51).

On May 3, 2024, the Institute Amended its Complaint based on the April 15, 2024, production. (Doc. 52 at 7). On May 7, 2024, the Department e-mailed the Institute its "final" FOIA response and a second production of documents, that added 80 pages to supplement the First Interim Response. (Id.) On August 28, 2024, the Department e-mailed the Institute a Revised April 15, 2024, production to replace the prior production of April 15, 2024. (Id. at 8).

On July 26, 2024, the Institute filed its Motion for Summary Judgment. (Doc. 18). On August 30, 2024, the Department filed its Response in Opposition to Plaintiff's Motion for Summary Judgment and cross-moved for summary judgment. (Doc. 22) In support of its cross-motion for summary judgment, the Department filed a separate statement of facts, attaching the Department's first Vaughn index. (Doc. 23) On October

18, 2024, the Department filed its reply in support of its cross-motion for summary judgment and included a revised <u>Vaughn</u> index. (Doc. 30).

On August 28, 2024, the Department issued an updated version of the Department's April 15, 2024, production to remove certain withholdings, to withhold certain material that the Department had inadvertently released, and to add Exemption 5 or 7(A) as an additional basis for certain withholdings that the Department originally made. (Doc. 52 at 8).

On March 26, 2025,[2] the Department withdrew its fine against GCU and dismissed GCU's appeal of the fine. (<u>Id.</u>) On May 16, 2025, the Court held a status conference on the pending motions of summary judgment. (<u>Id.</u>) After the conference, the Court ordered that the Department re-process and re-release documents responsive to the Institute's Request. (Doc. 45). Pursuant to the Court's Order, the Department provided the Institute with the Department's fourth production and third <u>Vaughn</u> index on July 14, 2025. (Doc. 52 at 8). On August 8, 2025, the Court held a second status conference on the pending cross-motions for summary judgment and ordered that Institute convey a letter of deficiencies to the Department, provide the Department with a window to respond, and set a date for cross-supplemental briefing on the pending cross-motions for summary judgment. (Doc. 46).

Pursuant to the Court's Order, the Institute provided the Department with a letter outlining the deficiencies of the July 14, 2025, production and <u>Vaughn</u> index on August 21, 2025. (Doc. 52 at 9). On September 25, 2025, the Department responded to the Institute's letter of deficiencies, provided a fifth production of documents and a fourth <u>Vaughn</u> index, and provided a declaration regarding the basis for the inconsistencies contained in the July 14, 2025, production and <u>Vaughn</u> index. (<u>Id.</u>)

Following the September 2025 production, the parties filed supplemental briefings to their cross-motions. (Docs. 50; 51). Also, pursuant to the Court's Order, the parties filed additional supplemental briefing on what represents an agency's final decision for purposes of assessing the applicability of the deliberative process privilege, as discussed

---

[2] In January 2025, there was a change in presidential administrations.

in U.S. Fish & Wildlife Serv. v. Sierra Club, Inc., and how it applies to this case.  (Docs. 54, 55, 56).

## II.    LEGAL STANDARD

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden to show that there are no genuine disputes of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In the FOIA context, courts review an agency's decision whether to disclose de novo. 5 U.S.C. § 552(a)(4)(B); see also Louis v. U.S. Dep't of Lab., 419 F.3d 970, 977 (9th Cir. 2005) (de novo review "requir[es] no deference to the agency's determination or rationale regarding disclosures"). However, courts "accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility. . . and reproducibility." 5 U.S.C. § 552(a)(4)(B). If the FOIA dispute presents a genuine issue of material fact, courts proceed to a bench trial or adversary hearing. Animal Legal Def. Fund v. U.S. Food & Drug Admin., 836 F.3d 987, 990 (9th Cir. 2016).

Upon proper request, federal agencies must disclose records to a member of the public. 5 U.S.C. § 552. Nine categories of records are exempt from disclosure. Id. The government has the burden of demonstrating that an exemption applies. Shannahan v. I.R.S., 672 F.3d 1142, 1148 (9th Cir. 2012) (citing Lahr v. Nat'l Transp. Safety Bd., 569 F.3d 964, 973 (9th Cir. 2009)). When responding to a FOIA request, the government must provide "tailored reasons" to justify withholding, and "may not respond with boilerplate or conclusory statements." Shannahan, 672 F.3d at 1148 (citing Wiener v. F.B.I., 943 F.2d 972, 978–79 (9th Cir. 1991)).

Courts are permitted to rule on summary judgment in FOIA cases solely based on government affidavits describing the documents sought. Church of Scientology of Cal. v.

U.S. Dep't of Army, 611 F.2d 738, 742 (9th Cir. 1979). Ordinarily, the government must submit detailed public affidavits identifying the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption. Wiener, 943 F.2d at 977. This submission is commonly referred to as a "Vaughn" index. See Vaughn v. Rosen, 484 F.2d 820, 823–25 (D.C. Cir. 1973). Because the court and the plaintiff do not have the opportunity to view the documents themselves, the submission must be "detailed enough for the district court to make a de novo assessment of the government's claim of exemption." Maricopa Audubon Soc. v. U.S. Forest Serv., 108 F.3d 1089, 1092 (9th Cir. 1997). *In camera* review is only necessary if affidavits and oral testimony cannot provide a sufficient basis for a court's decision. Pollard v. F.B.I., 705 F.2d 1151, 1154 (9th Cir. 1983).

## III.   DISCUSSION

The Institute moves for summary judgment contending that the Department (1) failed to comply with the FOIA's statutory deadline, (2) did not meet its burden of proof to establish that certain FOIA exemptions apply, and (3) did not reasonably segregate portions of records are not subject to an exemption. (Doc. 18). The Department filed a cross-motion for summary judgment contending that the Institute (1) is not entitled to declaratory relief for the Department's failure to respond to the Institute's FOIA request within the statutory time period, (2) that it properly withheld records under the FOIA exemptions, and (3) that it complied with the FOIA's segregability requirement. (Doc. 22). For the following reasons, the Court grants in-part and denies in-part the cross-motions.

### A. Adequate Segregability Requirement

"The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed." Pac. Fisheries, Inc. v. U.S., 539 F.3d 1143, 1148 (9th Cir. 2008); 5 U.S.C. § 552(a)(4)(B)(b). "Courts must apply that burden with an awareness that the plaintiff, who does not have access to the withheld materials, is at a distinct disadvantage in attempting to controvert the agency's claims." Maricopa Audubon Soc., 108 F.3d at 1092 (internal quotation omitted). The agency can meet its

burden by offering an affidavit with reasonably detailed descriptions of the withheld portions of the documents and alleging facts sufficient to establish an exemption. Id.; see also Wiener, 943 F.2d at 979 (holding that the FBI's explanation was not sufficiently specific when it "provide[d] no information about particular documents and portions of documents that might be useful in contesting nondisclosure"). The affidavits also must not be conclusory. Church of Scientology, 611 F.2d at 742. Rather the government should disclose "as much information as possible without thwarting the claimed exemption's purpose." Wiener, 943 F.2d at 979 (citation omitted).

The Ninth Circuit has repeatedly held that "[i]t is reversible error for the district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof, with respect to that document." Hamdan, 797 F.3d at 779 (alteration in original) (internal quotation marks omitted) (quoting Wiener, 943 F.2d at 988). This requirement dovetails with the principle that a district court errs when it grants summary judgment where the agency "did not provide [plaintiff] or the district court with specific enough information to determine whether the [agency] had properly segregated and disclosed factual portions of those documents that the [agency] claimed were exempt under the deliberative process privilege." Pac. Fisheries, Inc. v. U.S., 539 F.3d 1143, 1149 (9th Cir. 2008). However, non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." Mead Data Cent., Inc. v. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

To establish that all reasonably segregable, non-exempt information has been disclosed, the agency may provide a Vaughn index with "reasonably detailed descriptions of the withheld portions of the documents and alleging facts sufficient to establish an exemption." Pac. Fisheries, Inc., 539 F.3d at 1148. The Department provided various iterations of Vaughn indexes to the Court. (Docs. 23-3; 50-1).

The Department contends that it processed all records identified after an adequate and reasonable search for responsive records and released all reasonably segregable, no-exempt information from records responsive to Plaintiff's request. (Doc. 50 at 20). The Department elaborates that it carefully examined each record and conducted an extensive

review of each record at issue and identified information that could be released and information that was exempt from disclosure because of the deliberative process privilege, the attorney work-product privilege, the attorney-client privilege, or because the information was compiled for law enforcement purposes and related to an ongoing enforcement proceeding, as well as other FOIA exemptions that the Institute does not challenge. (Id.) The Department further contends that, after an extensive review of the records at issue, there is no further non-exempt information that can be reasonably segregated and released without revealing information exempt from disclosure under Exemption 5 and/or 7(A). (Id.) For the following reasons, the Court agrees with the Department that it reasonably segregated all non-exempt information and that the Vaughn index is sufficient.

### 1. FOIA Exemptions

The Institute contends that the Department did not meet its burden of proving that FOIA exemptions apply to the withheld records. (Doc. 18 at 9-11). In response, the Department contends that it properly withheld records under the relevant FOIA exemptions. (Doc. 22 at 9). The Institute currently only challenges that the Department improperly invoked the Exemption 5 deliberative process privilege to some of the withheld records. (See Doc. 51).

### a. Exemption 5

Pursuant to 5 U.S.C. § 552(b)(5), the Department withheld portions of documents that allegedly contain investigative and other communications, internal memoranda, communications with attorneys representing Defendant, and attorney client work product. (Doc. 22 at 9); (Doc. 50 at 10). The Institute challenges some of the Department's withholdings under the deliberative process privilege. (Doc. 51 at 8-10).

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 "incorporates the privileges available to Government agencies in civil litigation." U.S. Fish & Wildlife

Serv. v. Sierra Club, Inc., 592 U.S. 261, 267 (2021). Further, Exemption 5 covers the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege. ACLU of N. Cal. v. Dep't of Just., 880 F.3d 473, 483 (9th Cir. 2018).

### 1. Attorney-Client Privilege

"(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." U.S. v. Martin, 278 F.3d 988, 999 (9th Cir. 2002). In the context of the FOIA, "the agency is the 'client' and the agency's lawyers are the 'attorneys' for the purposes of attorney-client privilege." Competitive Enter. Inst. v. U.S. Env't Prot. Agency, 232 F. Supp. 3d 172, 184 (D.D.C. 2017) (quoting Judicial Watch v. Dep't of Treasury, 802 F.Supp.2d at 200). To support claims of attorney-client privilege, the agency must, in its Vaughn index, "list[] the records being withheld, whether each record was withheld in full or in part, provides a description of each record, explains the reasons [the agency] decided the record qualifies for [the privilege, and address[] the segregability of [the] withheld information." Competitive Enter. Inst., 232 F. Supp. 3d at 182. An agency fails to meet its burden if it uses to boilerplate language and makes "no effort ... to tailor the explanation to the specific document withheld. . . ." Wiener, 943 F.2d at 978–79. However, the Institute does not challenge the Department's withholdings under the attorney-client privilege, so the Court declines to address whether those withholdings are proper. (See Doc. 51).

### 2. Attorney Work-Product Privilege

The attorney work-product privilege protects from discovery in litigation "mental impressions, conclusions, opinions, or legal theories of a party's attorney" that were "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). Shielding from discovery materials prepared "with an eye toward the anticipated litigation" protects the integrity of adversarial proceedings by allowing attorneys to prepare their thoughts

and impressions about a case freely and without reservation. <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947). The privilege ensures that litigants cannot proceed "on wits borrowed from the adversary," <u>id.</u> at 516 (Jackson, J., concurring), and "prevent[s] exploitation of a party's efforts in preparing for litigation." <u>Holmgren v. State Farm Mut. Auto. Ins. Co.</u>, 976 F.2d 573, 576 (9th Cir. 1992) (quoting <u>Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.</u>, 881 F.2d 1486, 1494 (9th Cir. 1989)). "To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" <u>U.S. v. Richey</u>, 632 F.3d 559, 567 (9th Cir. 2011) (quoting <u>In re Grand Jury Subpoena</u>, 357 F.3d 900, 907 (9th Cir. 2004)). The Institute does not challenge the Department's withholdings under the attorney work-product privilege, so the Court declines to address whether those are proper. (<u>See</u> Doc. 51).

### 3. Deliberative Process Privilege

The deliberative process privilege allows the government to withhold "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated," <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 150 (1975) (internal quotation marks omitted). However, the deliberative process privilege does not apply "to documents that embody a final decision, because once a decision has been made, the deliberations are done." <u>Sierra Club, Inc.</u>, 592 U.S. at 268.

To fall within the Exemption 5 "deliberative process" privilege, the materials in question must be (1) "predecisional" in nature and (2) form part of the agency's "deliberative process." <u>Sears</u>, 421 U.S. at 151–52. A document is "predecisional" if it was "prepared in order to assist an agency decisionmaker in arriving at his decision." <u>Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.</u>, 421 U.S. 168, 184 (1975). However, if it is not self-evident whether a document represents an agency's final decision, then the court must look to whether the document "communicates a policy on which the agency has settled." <u>Sierra Club, Inc.</u>, 592 U.S. at 268. A document is

1    "deliberative" if "disclosure of materials would expose an agency's decision-making
2    process in such a way as to discourage candid discussion within the agency and thereby
3    undermine the agency's ability to perform its functions." Assembly of the State of Cal. v.
4    Dep't of Com., 968 F.2d 916, 921 (9th Cir. 1992) (quoting Dudman Comms. Corp. v.
5    Dep't of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).

6         Due to "the strong policy of the FOIA that the public is entitled to know what its
7    government is doing and why," exemption 5 is applied "as narrowly as consistent with
8    efficient Government operation." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d
9    854, 868 (D.C. Cir. 1980) (quoting S.Rep. No. 89–913, at 9 (1965)).

10        An agency has the burden to show that "(A) the materials at issue are covered by
11   the deliberative process privilege, and (B) it is reasonably foreseeable that release of
12   those materials would cause harm to an interest protected by that privilege." Reps.
13   Comm. For Freedom of the Press v. F.B.I., 3 F.4th 350, 361 (D.C. Cir. 2021); 5 U.S.C. §
14   552(a)(4)(B). "Agencies must concretely explain how disclosure would—not 'could'
15   adversely impair internal deliberations." Id. at 369-70. Although agency affidavits are
16   generally afforded a presumption of good faith, that presumption only applies to the
17   adequacy of the agency's search—not in regard to claimed exemptions. SafeCard Servs.,
18   Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991). To satisfy its burden as to the
19   applicability of exemptions, an agency affidavit must "contain reasonably detailed
20   descriptions of the documents and allege facts sufficient to establish an exemption."
21   Lewis v. I.R.S., 823 F.2d 375, 378 (9th Cir. 1987). When an affidavit is too generalized,
22   courts may scrutinize the withholdings more closely, including in camera review. Id.

23        In this case, the Department withheld the following information under the
24   deliberative process privilege:

25            (1) strategic discussions concerning the GCU investigation that preceded any
26            final agency decision (a) finding a violation of federal law, regulations, or
             program participation agreements or (b) enforcing federal law, regulations, or a
27            program participation agreement when violated; (2) email communications
             concerning the Department's statements to the press on the GCU investigation,
28            which predated the final statements to the press (3) email communications

1
2
3
4
5
6
7
    discussing the Department's potential response to communications from GCU's counsel, which predated the Department's potential formal responses to GCU; (4) discussion of other FSA matters involving GCU, such as GCU's recertification of its Program Participation Agreement ("PPA"), conditions placed on GCU's provisional PPA, and an open program review of GCU, which predated the Department's decision to offer GCU a provisional PPA with conditions relating to the findings in the GCU Investigation as well as the finalization of that provisional PPA; and (5) email communications between the Department and the FTC regarding the GCU investigation that predated the initiation of the fine against GCU.

8
(Doc. 50 at 12). The Court will proceed with addressing each challenged document.

9
### a. Adequacy of Vaughn Index

10
11
12
13
14
15
16
17
18
19
    The Institute contends that the Department's <u>Vaughn</u> index inadequately describes some of the documents for which exemptions are claimed. (Doc. 51 at 8); <u>Lewis</u>, 823 F.2d at 378. Specifically, the Institute contends that the <u>Vaughn</u> index broadly claims that Exemption 5 applies to all but two of the 130 documents, and that each time the exemption is claimed, the Department uses almost the exact same phrasing: "disclosure of the materials would have a chilling effect on frank and open discussions." (Doc. 51 at 8); <u>Shannahan</u>, 672 F.3d at 1148. Specifically, the Institute argues that in the September 25, 2025, <u>Vaughn</u> index, the Department claims that Exemption 5 cover documents 25, 82, 98, and 102, but they are neither pre-decisional, nor deliberative regarding any agency policy and the Department only justifies its withholding because disclosure would chill investigations or discussions in general. (Doc. 51 at 8).

20
21
22
23
24
25
26
27
28
    A <u>Vaughn</u> index is a submission that "identif[ies] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption." <u>Transgender L. Ctr</u>, 46 F.4th at 781 (quoting <u>Lahr</u>, 569 F.3d at 989 (internal citation omitted). A <u>Vaughn</u> index must "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of [agency] bad faith." <u>Hunt v. CIA</u>, 981 F.2d 1116, 1119 (9th Cir. 1992). "Specificity is the defining requirement of the Vaughn index." <u>Wiener</u>, 943 F.2d at 979; <u>see also</u> <u>Hamdan</u>, 797 F.3d

at 773 (agency must be "as specific as possible"). For this reason, the agency "may not respond with boilerplate or conclusory statements." <u>Shannahan</u>, 672 F.3d at 1148. The agency "bears the burden of demonstrating that the exemption properly applies to the documents." <u>Yonemoto v. Dep't of Veterans Affs.</u>, 686 F.3d 681, 692 (9th Cir. 2012), <u>overruled on other grounds by</u> <u>Animal Legal Def. Fund</u>, 836 F.3d at 989.

While it is not the case that "an agency can never repeat language to justify withholding multiple records," <u>Hamdan</u>, 797 F.3d at 774, an agency must "disclose[ ] as much information as possible without thwarting the [claimed] exemption's purpose," <u>Wiener</u>, 943 F.2d at 979. The Government "must bear in mind that the purpose of the index is not merely to inform the requester of the agency's conclusion that a particular document is exempt from disclosure. . .but to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest." <u>Id.</u> The government must demonstrate why the records at issue should not be opened for public inspection. <u>Id.</u> at 978. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.' " <u>Hamdan</u>, 797 F.3d at 774 (9th Cir. 2015) (quoting <u>Larson</u>, 565 F.3d at 862 (citation omitted).

The Institute argues that the following entries in the <u>Vaughn</u> index are insufficient because the Department's justification for the exemption is that disclosure could chill investigations or discussions "more generally":

Document 25: "contain strategic discussion of the GCU investigation, specifically as it relates to the process for certain aspects of the GCU investigation, as well as the Investigations Group's investigations more generally." (Doc. 50-1 at 16).

Document 82: "Disclosure of this information also would have a chilling effect on discussion of matters related to ensuring compliance with title IV program requirements more generally." (<u>Id.</u> at 51).

Document 98: "The emails discussing the timeline of the investigation discuss selective facts as well as contain FSA officials' summary and impressions of certain 'events' in the investigation, as well as investigations more generally." (<u>Id.</u> at 66).

1    Document 102: "Disclosure of discussions about other matters involving GCU

2    would chill the exchange of information about such matters to the extent they are relevant

3    to ongoing FSA investigations and would chill recommendations on such matters

4    generally. The emails discussing the timeline of the investigation discuss selective facts

5    as well as contain FSA officials' summary and impressions of certain 'events' in the

6    investigation, as well as investigations more generally." (Id. at 69).

7    In document 25, the Department withheld emails that were sent before a final

8    decision was made on the GCU investigation and contains "strategic discussion of the

9    GCU    investigation,    and    pre-decisional,    deliberative    discussions    regarding

10    recertification." (Id. at 16). The Court finds that the withheld information is both

11    predecisional and deliberative, so was properly withheld under the deliberative process

12    privilege. See Sears, 421 U.S. at 151–52.

13    In document 82, the Department withheld "emails to other FSA officials/staff and

14    OGC attorneys because they contain strategic discussions of the GCU investigation and

15    other FSA matters, including an open program review involving GCU." (Id. at 51). The

16    Court finds that withheld information is both predecisional and deliberative, so was

17    properly withheld under the deliberative process privilege. Id.

18    In document 98, the Department described that it withheld information because it

19    contains "strategic discussions" and "impressions" from Department staff regarding the

20    GCU investigation. (Id. at 66). The withheld information is both predecisional and

21    deliberative, so was properly withheld under the deliberative process privilege. Id.

22    In document 102, the Department withheld information that included "mental

23    impressions concerning the call and contains strategic discussions relating to the GCU

24    investigation and other matters involving GCU, including an open program review

25    involving GCU" and "internal deliberations about the GCU investigation and other FSA

26    matters involving GCU." (Id. at 69). The Court finds that the withheld information is

27    both predecisional and deliberative, so was properly withheld under the deliberative

28    process privilege. Id.

Moreover, the Court finds that the Department's Vaughn Index is adequate for the

Court to determine whether the deliberative process privilege was properly applied to the disputed documents. The Department's use of filler language, including "more generally" in the disputed documents is permissible because the Court can determine the claimed exemption's purpose. See Hamdan, 797 F.3d at 774; see also Wiener, 943 F.2d at 979. Further, the Department's Vaughn index contains reasoning that is not simply "boilerplate or conclusory statements." Shannahan, 672 F.3d at 1148. Accordingly, the Court finds that the Department's Vaughn Index is sufficiently detailed and provides an adequate basis for determining whether an exemption applies and grants the Department's motion for summary judgment regarding the adequacy of its Vaughn Index.

### b. Post-decisional

Pre-decisional documents are those that include "subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Maricopa Audubon Soc., 108 F.3d at 1093 (citation omitted). Because an agency's interpretations of its decisions often become the "working law" of the agency, documents deemed "postdecisional" do not enjoy the protection of the deliberative process privilege. Sears, 421 U.S. at 153. This ensures that the agency does not operate on the basis of "secret law." Coastal States, 617 F.2d at 866.

Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." Sierra Club, Inc., 592 U.S. at 268. "A 'predecisional' document is one prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Lahr, 569 F.3d at 979. While documents that lead to a policy decision may be pre-decisional, documents explaining or interpreting a decision after the fact are post-decisional and not subject to the deliberative process privilege. Assembly of State of Cal., 968 F.2d at 920; see also Grumman, 421 U.S. at 184 (post-decisional memoranda set forth the reasons for an agency decision already made and therefore were not privileged).

However, "[a] document is not final solely because nothing else follows it." <u>Sierra Club, Inc.</u>, 592 U.S. at 268. What matters, is whether the document "communicates a policy on which the agency has settled." <u>Id.</u> "To decide whether a document communicates the agency's settled position, courts must consider whether the agency treats the document as its final view on the matter." <u>Id.</u> (citation omitted). When a decision is final the deliberative "process by which governmental decisions and policies are formulated will have concluded, and the document will have real operative effect." <u>Id.</u> at 268-69 (citation and internal quotation marks omitted); <u>see</u> <u>Bennett v. Spear</u>, 520 U.S. 154, 177–78 (1997) (discussing finality in context of obtaining judicial review of agency action). "By contrast, a document that leaves agency decisionmakers "free to change their minds" does not reflect the agency's final decision." <u>Sierra Club, Inc.</u>, 592 U.S. at 269 (citing <u>Grumman</u>, 421 U.S. at 189–90, and n. 26). However, "determining whether an agency's position is final for purposes of the deliberative process privilege is a functional rather than formal inquiry." <u>Sierra Club, Inc.</u>, 592 U.S. at 272-73. "If the evidence establishes that an agency has hidden a functionally final decision in draft form, the deliberative process privilege will not apply." <u>Id.</u> at 273.

The Institute contends that the Department's functionally final decision came out on May 12, 2023, when the Department sent GCU a letter stating that the investigation had concluded, detailed the allegations, and offered GCU an opportunity to oppose enforcement action. (Docs. 55 at 5; 23-1 at 4). However, as the Department notes, the May 12, 2023, letter sent from "the Investigations Group informed GCU that it had evidence that suggested GCU made substantial misrepresentations regarding the cost, credits, and completion time required for GCU's online doctoral programs that required a dissertation." (Doc. 56 at 2; <u>Id.</u>). Also, in the May 12, 2023, letter the Investigations Group "informed GCU that an enforcement action by the Department against GCU was *possible*, and that such action *could* include a fine and limitations or conditions on GCU's participation in the federal student aid program." (<u>Id.</u>) (emphasis added). Further, the Institute contends that the final agency decisions occurred "certainly no later than October 22, 2023, when the Department approved the fine action." (Doc. 55 at 6, n.2).

The Department contends that "[a]lthough Cordray approved the initiation of a fine action against GCU on October 22, 2023, the final agency decision occurred on October 31, 2023." (Docs. 56 at 3; 23-2). Further, as stated in, "[t]he October 31, 2023, "letter that initiated the fine against GCU represents the Department's final decision to initiate the final action and the amount of the initiated fine, as well as the Department's formal, final reasoning for initiating the fine action." (Id.) Consequently, the Department contends that the withheld information predates the Department's October 31, 2023, letter is therefore protected under the deliberative process privilege. (Doc. 56 at 3).

In <u>Sierra Club</u>, 592 U.S. 261, the Supreme Court recently held that the deliberative process privilege protected draft biological opinions because they reflected "a preliminary view—not a final decision—about the likely effect of the EPA's proposed rule on endangered species." There, the Court noted: (1) the administrative context confirmed that the documents labeled "drafts" were what they sounded like, "opinions that were subject to change"; (2) there existed the possibility for "postcirculation changes"; (3) a final document leads to "direct and appreciable legal consequences" which is not true of draft opinions; and (4) the agency did not treat the documents as final. <u>Id.</u> at 268-71.

Here, although Corday approved the initiation of a fine action against GCU on October 22, 2023, it was not the agency's final decision. Rather, the October 31, 2023, letter which formally notified GCU of the fine and "described the background, evidence, and rationale for the fine," was the agency's final decision. The October 31, 2023 letter informed GCU of the legal consequences of the action, "that the fine would be imposed on November 20, 2023, unless the Director of the Administrative Actions and Appeals Service Group received, by that date, a request for a hearing to be conducted by the Office of Hearings and Appeals ("OHA") or written material indicating why the fine should not be imposed." (Doc. 23-1 at 5).

Consequently, documents that predate the Department's fine action letter on October 31, 2023, are deliberative, as they contain strategic discussion of the letter and the initiation of the fine action against GCU, including recommendations regarding the

letter and its substantive contents. These documents are also predecisional because they were opinions subject to change, sought "postcirculation changes", did not have "direct and appreciable legal consequences", and the agency did not treat these documents as final. <u>Sierra Club</u>, 592 U.S. at 268-71.

The Court agrees with the Department that the release of documents that predate the October 31, 2023, letter "would expose [the] agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." <u>Maricopa Audubon Soc.</u>, 108 F.3d at 1093. Also, "an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.' " <u>Hamdan</u>, 797 F.3d at 774. Accordingly, the Court grants the Department's motion on the date of the agency's final decision.

### c.  Objective Material

The deliberative process privilege does not cover "[p]urely factual material that does not reflect deliberative processes. . . ." <u>FTC v. Warner Comms., Inc.</u>, 742 F.2d 1156, 1161 (9th Cir. 1984) (citing <u>Mink</u>, 410 U.S. at 87–89). Only when the "factual material ... is so interwoven with the deliberative material that it is not severable" is an agency relieved of the burden to segregate and disclose non-privileged factual information. <u>Id.</u> (citing <u>Binion v. Dep't of Just.</u>, 695 F.2d 1189, 1193 (9th Cir. 1983)). An agency must "provide specific information with respect to segregability…" <u>Transgender L. Center</u>, 46 F.4th at 786 (citing <u>Hamdan</u>, 797 F.3d at 779.)

Even if the content of a document is factual, if disclosure of the document would expose "the decision-making process itself" to public scrutiny by revealing the agency's "evaluation and analysis of the multitudinous facts," the document is nonetheless exempt from disclosure. <u>Montrose Chem. Corp. of Cal. v. Train</u>, 491 F.2d 63, 68 (D.C. Cir. 1974). In other words, the document is part of the "deliberative process" as long as it is "actually. . .related to the process by which policies are formulated." <u>Jordan</u>, 591 F.2d at 774. Accordingly, Exemption 5 protects "documents that would reveal the process by which agency officials make these determinations, whether or not the documents themselves contain facts on non-binding recommendations regarding law and policy."

Nat'l Wildlife Fed'n, 861 F.2d at 1119; see e.g., Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

However, "a report does not become part of the deliberative process simply because it contains only those facts which the person making the report thinks material." Playboy Enterprises, Inc. v. Dep't of Just., 677 F.2d 931, 935 (D.C. Cir. 1982). The material is only exempt where either the disclosure of the manner of selecting or presenting facts would expose the deliberative process, or where facts are "inextricably intertwined" with "policy-making processes". Ryan, 617 F.2d at 790.

The Institute contends that the Department wrongfully withheld documents under Exemption 5 to facts relayed to agency personnel because they are not "predecisional" and "do not reflect the agency's internal, deliberative process that precedes policymaking." (Doc. 51 at 9). In response, the Department contends that the factual material is protected under the deliberative process privilege "[w]here either the disclosure of the manner of selecting and presenting facts would expose the deliberative process, or where facts are 'inextricably intertwined' with 'policy-making processes.'" (Doc. 50 at 15) (quoting Nat't Wildlife Fed., 861 F.2d at 1119) (citation omitted).

The Department contends that the factual material was properly withheld because the documents contain

> (1) mental impressions and summary of relevant facts related to the GCU investigation, the disclosure of which would expose the deliberative process in issuing a finding and determining what, if any, actions to take in the GCU investigation (FOIA Docs. 4, 7); (2) recommendations on Department action which included selective acts to support such recommendations, the disclosure of which would expose the deliberative process in investigating and taking enforcement action (FOIA Docs 6, 39, 112); (3) legal conclusions by Department attorneys which include selective facts to support such legal conclusions and recommendations, the disclosure of which would disclose the deliberative process by providing insights into the attorneys' decision making process (FOIA Docs. 50, 54, 113); and (4) agency officials' summary and impressions of, among other things, certain events in the investigation, the disclosure of which would expose the deliberative process by revealing such officials' predecisional views on the investigation (FOIA Docs. 96, 98).

(Doc. 50 at 15-16).

1    The Court must consider whether there is segregable information in the material

2  withheld under the deliberative process privilege and proceeds with a document-by-

3  document review below. See Transgender L. Ctr., 46 F.4th at 787.

| Document Number | Exemption(s) | Department's Justification | Institute's Reason Exemption Does Not Apply | Court's Holding |
|---|---|---|---|---|
| 4 | (b)(5)-deliberative process privilege | The email was withheld because "it contains Madaio's mental impressions and summary of relevant facts related to the GCU investigation." (Doc. 50-1 at 4). | "Relevant facts" are not subjective or the personal opinions of the writer. Maricopa Audubon Soc. v. U.S. Forest Serv., 108 F.3d 1089, 1093 (9th Cir. 1997); (Doc. 26 at 13). | The Court finds that the withholding of the relevant facts is proper because the disclosure of the "relevant facts" are likely so interwoven with the deliberative material that they are not severable. |
| 6 | (b)(5)-deliberative process privilege attorney-client privilege; (b)(7)(A)-law enforcement exception | "contain the recommendations, and selective facts and legal analysis to support those recommendations, of the Investigations Group to the Chief Enforcement Officer regarding the FSA investigation" (Id. at 6). | "Selective facts" are not subjective or the opinions of the writer. Id.; (Id.) | The Court finds that the withholding is proper because the "selective facts" are likely so interwoven with the deliberative material that they are not severable. Also, the parties do not dispute that the material is exempt under the attorney-client privilege and the law enforcement exception. |
| 7 | (b)(5)-deliberative process privilege & | "contents of two emails from Madaio to Donoghue | "Selective supporting facts" and "factual information" are | The Court finds that the withholding is proper because the |

| | | | | |
|---|---|---|---|---|
| | attorney-client privilege | because the emails contain his mental impressions and recommendations concerning the GCU investigation and GCU's recertification of its PPA, as well as selective supporting facts" (Id. at 6). | not subjective or the personal opinions of the writer. Id.; (Id.) | "selective supporting facts" are likely so interwoven with the deliberative material that they are not severable. Also, the parties do not dispute that the material is exempt under the attorney-client privilege. |
| 39 | (b)(5)-deliberative process privilege | "identifies recertification and CIO cases that required internal discussion, including GCU's PPA recertification, and contains recommendations and selective facts regarding those cases" (Id. at 23). | "Selective facts" are not subjective or the personal opinions of the writer. Id.; (Id.) | The Court finds that the withholding is proper because the "selective facts" are likely so interwoven with the deliberative material that they are not severable. |
| 54 | (b)(5)-deliberative process privilege, attorney-client privilege, and attorney work-product privilege | "The recommendation constitutes both legal advice and an investigative recommendation from Madaio to Cordray regarding the GCU investigation, and the document was drafted in reasonable anticipation of | "Selective facts" are not subjective or the personal opinions of the writer. Id.; (Id.) | The Court finds that the withholding is proper because the "selective facts" are likely so interwoven with the deliberative material that they are not severable. Also, the parties do not dispute that the material is exempt under the attorney-client |

| | | litigation with GCU regarding the investigation." (Id. at 32). | | privilege and the attorney work-product privilege. |
|---|---|---|---|---|
| 96 | (b)(5)-deliberative process privilege | ". . .contain strategic discussions concerning a timeline of the GCU investigation and other matters involving GCU. The emails discussing the timeline of the investigation discuss selective facts as well as contain FSA officials' summary and impressions of certain "events" in the investigation." (Id. at 65). | "Selective facts" are not subjective or the personal opinions of the writer. Id.; (Id. at 14). | The Court finds that the withholding is proper because the "selective facts" are likely so interwoven with the deliberative material that they are not severable. |
| 98 | (b)(5)-deliberative process privilege & attorney-client privilege | ". . .contain strategic discussions concerning a timeline of the GCU investigation and other matters involving GCU, as well as investigations more generally. The emails discussing the timeline of the | "Selective facts" are not subjective or the personal opinions of the writer. Id.; (Id.) | The Court finds that the withholding is proper because the "selective facts" are likely so interwoven with the deliberative material that they are not severable. Also, the parties do not dispute that the material is exempt under the attorney-client |

| | | | | |
|---|---|---|---|---|
| | | investigation discuss selective facts as well as contain FSA officials' summary and impressions of certain "events" in the investigation, as well as investigations more generally." (Id. at 66). | | privilege. |
| 112 | (b)(5)- deliberative process privilege | ". . .describes Crim's conclusions and enforcement recommendations to Cordray regarding the GCU investigation – specifically, the fine action – and contains factual information to support that conclusion." (Id. at 74). | "Factual information" is not subjective or the personal opinions of the writer. Id.; (Id.) | The Court finds that the withholding is proper because the "selective facts" are likely so interwoven with the deliberative material that they are not severable. |
| 113 | (b)(5)- deliberative process privilege, attorney-client privilege, attorney work-product doctrine | "The summary contains the legal conclusions of Madaio and selective facts to support that conclusion." (Id. at 75). | "Selective facts" are not subjective or the personal opinions of the writer. Id.; (Id.) | The Court finds that the withholding is proper because the "selective facts" are likely so interwoven with the deliberative material that they are not severable. Also, the parties |

| | | | | do not dispute that the material is exempt under the attorney-client privilege and attorney work-product doctrine. |
|---|---|---|---|---|

Accordingly, the Court finds that the Department properly withheld the material that contains factual material.

### d. Draft Press Statements

The Institute contends that the deliberative process privilege does not apply to communications regarding press releases and public relations. (Doc. 51 at 10). In response, the Department contends that it adequately explained why the documents were properly withheld in its <u>Vaughn</u> index. (Doc. 50 at 16-17).

However, "[g]overnment deliberations regarding how best to address public relations matters or possible responses to an inquiry received from an outside entity" are not necessarily the type of policy decisions the privilege covers. <u>Transgender L. Ctr.</u>, 46 F.4th at 783 (citation omitted). Further, when an agency does not adequately explain how the release of draft press statements would reveal a deliberative process, then the district court must order the agency release the documents. <u>Id.</u>

| Document Number | Exemption | Department's Justification | Institute's Reason Exemption Should Not Apply | Court's Holding |
|---|---|---|---|---|
| 1 | (b)(5)-deliberative process privilege; attorney-client privilege | ". . .contains recommendations concerning a variety of policy issues; informational updates on ongoing policy work and congressional inquiries; and notes for upcoming briefings and | This includes emails with April Jordan, an FSA communications unit employee. Documents prepared for a press release are not a part of deliberative process privilege. <u>Transgender L. Ctr.</u>, 46 F.4th at 783; (Doc. 26 at 19). | The Department unlawfully withheld the notes for upcoming press briefings because it did not explain how the release of the information would reveal a deliberative process. <u>See</u> |

| | | | | |
|---|---|---|---|---|
| | | meetings. One withheld portion of the email also relays legal advice from OGC on a specific issue." (<u>Id.</u> at 3). | | <u>Transgender L. Ctr.</u>, 46 F.4th at 783. However, the withheld portion of the email the contains legal advice is properly withheld. |
| 2 | (b)(5)-deliberative process privilege | ". . .contains recommendations concerning a variety of policy issues; informational updates on ongoing policy work; and notes for upcoming briefings and meetings." (<u>Id.</u>) | This includes emails with April Jordan, a FSA communications unit employee. Documents prepared for a press release are not a part of the deliberative process privilege. <u>Id.</u>; (<u>Id.</u>) | The Department unlawfully withheld the notes for upcoming press briefings because it did not explain how the release of the information would reveal a deliberative process. <u>Id.</u> |
| 3 | (b)(5)-deliberative process privilege | ". . .contains recommendations concerning a variety of policy issues; informational updates on ongoing policy work and congressional inquiries; information on enforcement matters; and notes for upcoming briefings and meetings." (<u>Id.</u> at 4). | This includes emails with April Jordan, a FSA communications unit employee. Documents prepared for a press release are not a part of the deliberative process privilege. <u>Id.</u>; (<u>Id.</u>) | The Department unlawfully withheld the notes for upcoming press briefings because it did not explain how the release of the information would reveal a deliberative process. <u>Id.</u> |
| 61 | (b)(5)-deliberative | ". . .convey strategic | This includes emails with April Jordan, a | The Department unlawfully |

| | | process privilege | information concerning the status of the GCU investigation." (Id. at 37). | FSA communications unit employee. Documents prepared for a press release are not a part of the deliberative process privilege. Id.; (Id.) | withheld any material that relates to documents prepared for a press release under the deliberative process privilege because it did not explain how the release relating to communication with a FSA communications employee of would reveal a deliberative process. Id. |
| --- | --- | --- | --- | --- | --- |
| | 94 | (b)(5)- deliberative process privilege; attorney- client privilege | "In developing the statement to the press, Department staff solicited legal advice from various OGC attorneys on the statement's contents, and OGC attorneys. . . ." (Id. at 61). | Documents prepared for a press release are not a part of the deliberative process privilege. Id.; (Id.) | The Department unlawfully withheld the documents under the deliberative process privilege but lawfully withheld the documents under the attorney-client privilege. |
| | 101 | (b)(5)- deliberative process privilege | ". . .strategic discussion concerning FSA's work on the GCU fine action, which is part of ED's internal deliberations on | This includes emails with April Jordan and Melody Cowan, FSA communication unit employees. Documents prepared for a press release are not part of the | The Department unlawfully withheld any material that relates to documents prepared for a press release |

| | | the GCU investigation. . . . contain strategic discussions of the GCU investigation and fine action, which, at the time, had not yet been approved by the Chief Operating Officer, nor had the fine been issued to GCU." (Id. at 68). | deliberative process privilege. Id.; (Id. at 20). | under the deliberative process privilege. Id. |
|---|---|---|---|---|
| 128 | (b)(5)-deliberative process privilege; attorney-client privilege | "contains strategic discussions about the GCU investigation" (Id. at 85). | This includes emails with April Jordan and Melody Cowan, FSA communication unit employees. Documents prepared for a press release are not part of the deliberative process privilege. Id.; (Id.) | The Department unlawfully withheld any material that relates to documents prepared for a press release under the deliberative process privilege but properly withheld the documents under the attorney-client privilege. Id. |

The Court finds that the Department did not adequately segregate the exempt and non-exempt material in the following documents. Accordingly, the Department must release any withheld the notes or materials for press briefings or press releases in documents 1, 2, 3, 61 and 101. See Transgender L. Ctr., 46 F.4th at 783.

**e. Inter-agency Documents**

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an

agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "To qualify, a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).

The FOIA defines an agency as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President, or any independent regulatory agency[.]" 5 U.S.C. § 552(f)(1). Additionally, under the FOIA, "agency" does not include Congress. § 551(1)(A). Accordingly, Congress and any unit of Congress is not an "agency" under the FOIA. See Mayo v. U.S. Gov't Printing Off., 9 F.3d 1450, 1451 (9th Cir. 1993) (holding that Government Printing Office is not covered under the FOIA because it is a unit of Congress).

The Institute contends that the Department unlawfully withheld "its answers to inquiries from U.S. Senator Kyrsten Sinema's staff, White House communications staff, and the Government Accountability Office ("GAO"). (Doc. 51 at 9-10). Congress is not an agency under the FOIA, so answers to inquiries from congressional staffers do not fall under the Exemption 5 deliberative process privilege. See Mayo, 9 F.3d at 1451. Thus, the Department must release the Department's response to the inquiry from Senator Sinema's staff in Document 95.

Also, the GAO is within the legislative branch, so is not considered an agency within the meaning of the FOIA. However, the Department lawfully withheld the information related to the GAO in document 5 because it contained draft responses that were antecedent to the Department's response to GAO and were part of the deliberative process of finalizing a response to GAO.

The Institute also contends that White House communication staff are not an agency under the FOIA. (Doc. 51 at 9-10). However, the FOIA specifically states that an agency includes the "executive branch of the Government (including the Executive Office of the President, or any independent regulatory agency[.]" 5 U.S.C. § 552(f)(1).

1    The White House Communications Office is within the Executive Office of the President,

2    so the Department lawfully withheld the challenged information in Document 94 as an

3    inter-agency communication.

### f.  Email Subject Lines

5    The Institute contends that the Department wrongly withheld email subject lines

6    because subject lines of emails typically fall outside of the deliberative process privilege

7    of Exemption 5. (Doc. 51 at 10); see Pub. Citizen, Inc. v. U.S. Dep't of Educ., 388 F.

8    Supp. 3d 29 (D.D.C. 2019) (collecting cases); see also Clarke v. Am. Commerce Nat'l

9    Bank, 974 F.2d 127, 129 (9th Cir. 1992).

10    The Department contends that it withheld subject lines of certain emails because it

> would reveal deliberative material, attorney-client communications, and/or
> attorney-work product including: (1) specific recommendations and/or
> strategy under discussion; (2) specific aspects of the GCU investigation
> being discussed by agency attorneys; (3) the nature of the issues for which
> FSA sought legal advice; and (4) the nature of the strategic discussions.

15    (Doc. 50 at 18). However, the Department does not cite any case law that supports its

16    proposition that it lawfully withheld the email subject lines. (See Id.)

17    The Court agrees with the Institute that subject lines of emails are generally not

18    exempt from disclosure in FOIA cases, except if the subject line of the email is

19    sufficiently detailed that the redacted information would reveal the motive for seeking

20    legal advice under the attorney-client privilege. Pub. Citizen, Inc., 388 F. Supp. 3d at 42.

21    Further, the Institute contends that subject lines of emails are not draft documents,

22    and that the Department has failed to prove how email subject lines relate to the process

23    by which policies are formulated. (Doc. 26 at 8); see Maricopa Audubon Soc., 108 F.3d

24    at 1093. However, the court notes that the title of a document can be withheld under the

25    deliberative process privilege if the release of the document's title "would expose the

26    agency's internal deliberations in such a way that would discourage candid discussion

27    and effective decisionmaking." Lahr, 569 F.3d at 983.

28    The Court addresses the disputed email subject lines below:

| Document | Exemption(s) Applied to Email Subject Lines | Justification | Plaintiff's Reason Why Exemption Should Not Apply | Court's Determination |
|---|---|---|---|---|
| 5 | (b)(5)-deliberative process privilege | "indicates the specific GAO questions to which the draft responses pertained" (Doc. 50-1 at 5). | Subject lines of emails are not drafts. Maricopa Audubon Soc., 108 F.3d at 1093; (Doc. 26 at 20). | The withholding is improper because the Department does not adequately explain how a specific question from GAO is deliberative. Also, the GAO is not an agency under the FOIA. |
| 11 | (b)(5)-deliberative process privilege | "could reveal the reason for the strategic discussions concerning the GCU investigation" (Id. at 7). | Subject lines of emails are not drafts. Id.; (Id.) | This is an improper withholding because "[a]gencies must concretely explain how disclosure would—not 'could' adversely impair internal deliberations." Reps. Comm. For Freedom of the Press, 3 F.4th at 369-70. |
| 23 | (b)(5)-deliberative process privilege & attorney-client privilege | "disclosure of this information would reveal the specific aspect of the GCU investigation being discussed by FSA and OGC attorneys" (Id. at 13). | Subject lines of emails are not drafts. Id.; (Id. at 21). | Proper withholding because the Department adequately explains how the release of the email subject line would "expose the agency's internal deliberations in such a way that would discourage candid discussion |

| | | | | and effective decisionmaking." Id. |
|---|---|---|---|---|
| 24 | (b)(5)-deliberative process privilege | "the disclosure of this information would reveal the specific aspect of the GCU investigation being discussed by FSA and OGC attorneys" (Id. at 15). | Subject lines of emails are not drafts. Id.; (Id.) | Proper withholding because the Department adequately explains how the release of the email subject line would "expose the agency's internal deliberations in such a way that would discourage candid discussion and effective decisionmaking." Id. |
| 26 | (b)(5)-deliberative process privilege; attorney-client privilege | "reveal the specific nature of the discussion" (Id. at 17). | Subject lines of emails are not drafts. Id.; (Id.) | Proper withholding because the Department adequately explains how the release of the email subject line would "expose the agency's internal deliberations in such a way that would discourage candid discussion and effective decisionmaking." Id. Also, disclosure of the email subject line would expose the subject matter of an attorney-client communication. |
| 31 | (b)(5)-deliberative process privilege | "Disclosure of this information | Subject lines of emails are not | Proper withholding because the |

| | | | | |
|---|---|---|---|---|
| | & attorney-client privilege | would reveal the nature of the issue about which FSA intended to seek OGC's legal advice, which would have a chilling effect on the attorney-client relationship between OGC and FSA….Disclosure of this information would also have a chilling effect on frank discussions between FSA employees concerning ongoing FSA investigations." (Id. at 19). | drafts. Id.; (Id.) | Department adequately explains how the release of the email subject line would "expose the agency's internal deliberations in such a way that would discourage candid discussion and effective decisionmaking." Id. Also, the email subject line is exempt from disclosure under the attorney-client privilege. |
| 33 | (b)(5)-deliberative process privilege & attorney-work-product privilege | "to prevent the reveal of the specific subject on which [the Department employee] was providing his thoughts and recommendations" (Id. at 20). | Subject lines of emails are not drafts. Id.; (Id. at 22). | Proper withholding because the Department adequately explains how the release of the email subject line would "expose the agency's internal deliberations in such a way that would discourage candid discussion and effective decisionmaking." Id. |

| 35 | (b)(5)-deliberative process privilege | "the subject line of each of the emails in this exchange because the release of that information would reveal the specific issue about which FSA attorneys contacted FTC attorneys concerning the GCU investigation" (Id. at 21). | Subject lines of emails are not drafts. Id.; (Id.) | Proper withholding because the Department adequately explains how the release of the email subject line would "expose the agency's internal deliberations in such a way that would discourage candid discussion and effective decisionmaking." Id. |
|----|----|----|----|----|
| 37 | (b)(5)-deliberative process privilege | "the release of that information would reveal the specific issue [they] were discussing" (Id. at 22). | Subject lines of emails are not drafts. Id.; (Id.) | Proper withholding because the Department adequately explains how the release of the email subject line would "expose the agency's internal deliberations in such a way that would discourage candid discussion and effective decisionmaking." Id. |
| 42 | (b)(5)-deliberative process privilege | "the redacted material would reveal the specific topics of discussion concerning the GCU (and another FSA matter | Subject lines of emails are not drafts. Id.; (Id.) | Proper withholding because the Department adequately explains how the release of the email subject line would "expose the agency's internal |

| | | | | |
|---|---|---|---|---|
| | | involving an unrelated institution)" (<u>Id.</u> at 25). | | deliberations in such a way that would discourage candid discussion and effective decisionmaking." <u>Id.</u> |
| 45 | (b)(5)-deliberative process privilege | "concern a draft recommendation by FSA's Investigations Group" (<u>Id.</u> at 26-27). | Subject lines of emails are not drafts. <u>Id.</u>; (<u>Id.</u>) | Proper withholding because the Department adequately explains how the release of the email subject line would "expose the agency's internal deliberations in such a way that would discourage candid discussion and effective decisionmaking." <u>Id.</u> |
| 46 | (b)(5)-deliberative process privilege | "[W]ithheld the contents of emails, and part of the subject line of ED withheld the contents of emails, and part of the subject line of emails, between Madaio and Donoghue that concern a draft recommendation by FSA's Investigations Group." (<u>Id.</u> at 27). | Subject lines of emails are not drafts. <u>Id.</u>; (<u>Id.</u>) | Proper withholding because the Department adequately explains how the release of the email subject line would "expose the agency's internal deliberations in such a way that would discourage candid discussion and effective decisionmaking." <u>Id.</u> |

| 58 | (b)(5)-deliberative process privilege | "would reveal the specific contents of the draft letter" (<u>Id.</u> at 35). | Subject lines of emails are not drafts. <u>Id.</u>; (<u>Id.</u>) | Proper withholding because the Department adequately explains how the release of the email subject line would "expose the agency's internal deliberations in such a way that would discourage candid discussion and effective decisionmaking." <u>Id.</u> |
|----|----|----|----|----|
| 60 | (b)(5)-deliberative process privilege | "would reveal the specific contents of the letter" (<u>Id.</u> at 36). | Subject lines of emails are not drafts. <u>Id.</u>; (<u>Id.</u> at 23). | Proper withholding because the Department adequately explains how the release of the email subject line would "expose the agency's internal deliberations in such a way that would discourage candid discussion and effective decisionmaking." <u>Id.</u> |
| 99 | (b)(5)-deliberative process privilege | "would reveal the specific nature of some of the strategic discussions" (<u>Id.</u> at 67). | Subject lines of emails are not drafts. <u>Id.</u>; (<u>Id.</u>) | Proper withholding because the Department adequately explains how the release of the email subject line would "expose the agency's internal deliberations in such a way that |

| | | | | |
|---|---|---|---|---|
| | | | | would discourage candid discussion and effective decisionmaking." <u>Id.</u> |
| 119 | (b)(5)-deliberative process privilege, attorney-client privilege, attorney-work product privilege | "withheld in full the contents of emails between Madaio and Crim concerning the GCU investigation, as well as the subject line of each email between them. . . . because the emails contain strategic discussions about the GCU investigation." (<u>Id.</u> at 78). | Subject lines of emails are not drafts. <u>Id.</u>; (<u>Id.</u>) | Proper withholding because the Department adequately explains how the release of the email subject line would "expose the agency's internal deliberations in such a way that would discourage candid discussion and effective decisionmaking." <u>Id.</u> |
| 125 | (b)(5)-deliberative process privilege | "the release of such information would reveal the nature of the Department's strategic discussions about the GCU fine action letter" (<u>Id.</u> at 83). | Subject lines of emails are not drafts. <u>Id.</u>; (<u>Id.</u> at 24) | Proper withholding because the Department adequately explains how the release of the email subject line would "expose the agency's internal deliberations in such a way that would discourage candid discussion and effective decisionmaking." <u>Id.</u> |

| 128 | (b)(5)-deliberative process privilege | "the withheld material reveals the nature of the strategic discussions about the GCU investigation" (Id. at 86). | Subject lines of emails are not drafts. Id.; (Id.) | Proper withholding because the Department adequately explains how the release of the email subject line would "expose the agency's internal deliberations in such a way that would discourage candid discussion and effective decisionmaking." Id. |

Accordingly, the Department met its burden to establish that most of the email subject lines were properly withheld. However, the Department must release the email subject lines for Document Nos. 5 and 11.

### g. Policy decision

The Institute also contends that the fine against GCU is not a policy decision by the Department, but rather, it is an enforcement decision that is not subject to the deliberative process privilege. (Doc. 51 at 9-10). However, as the Department contends, the deliberative process privilege "covers 'documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which [g]overnment decisions and policies are formulated[.]' " Klamath, 532 U.S. at 8 (citing Sears, 421 U.S. at 150); (Doc. 50 at 15). Accordingly, even though the Department's fine action against GCU may be better described as an enforcement decision, and not a policy decision, it is still covered under the Exemption 5 deliberative process privilege.

### 4. Exemption 7(A)

The Institute contends that it substantially prevailed on its challenge to the Department's withholdings under Exemption 7(A). (Doc. 51 at 11). Specifically, the Institute argues that after this Court ordered the Department to re-process and re-review its withholdings the Department removed some of the prior references to Exemption

7(A), so they substantially prevailed in their challenge to the Department's withholdings under exemption 7(A). (Id.) The Department continues to withhold material in documents 5, 6, and 105 under Exemption 7(A) and the Institute does not challenge these withholdings. (Doc. 50 at 8).

The Department previously claimed that Exemption 7(A) applies to records pertaining to the GCU fine action. (Doc. 22 at 13-16). Exemption 7(A) applies to law enforcement records, the release of which "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). To apply Exemption 7(A), the Department must provide that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." Citizens for Resp. & Ethics in Wash. v. Dep't of Just., 746 F.3d 1082, 1096 (D.C. Cir. 2014); see also Lewis, 823 F.2d at 379 (an agency must prove that documents would interfere with pending enforcement proceedings).

Additionally, the FOIA allows courts to assess "reasonable attorney fees and other litigation costs" against the federal government when a plaintiff has "substantially prevailed." § 552(a)(4)(E)(i). This occurs when a plaintiff obtains information as part of a FOIA suit through either "a judicial order, or an enforceable written agreement or consent decree" or "a voluntary or unilateral change in position by the agency." Id.; § 552(a)(4)(E)(ii). If a plaintiff substantially prevails, the plaintiff is eligible for fees. Id.; § 552(a)(4)(E).

Here, the Court does not find that the Institute is entitled to attorney fees for substantially prevailing on its challenge to the Department's withholding under Exemption 7(A). At the time the Department applied Exemption 7(A), the Department demonstrated that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." Citizens for Resp. & Ethics in Wash., 746 F.3d at 1096. The Department withheld, under Exemption 7(A), from Plaintiff information concerning the Department's open investigation concerning GCU. (Doc. at 16). The Court agrees with the Department that the

information if released, at the time, would place the Department at a disadvantage in defending GCU's appeal. (Id.); see N.L.R.B. v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978). Also, the Department removed its use of Exemption 7(A) once the fine action against GCU was dismissed, and there was no Court order that held that the Department's prior withholdings under Exemption 7(A) were improper. Moreover, the Department properly invoked Exemption 7(A) because disclosure could reasonably be expected to interfere with the Department's ability to defend against GCU's appeal of the fine action that was ongoing at the time the Department invoked the exemption. Accordingly, the Institute did not substantially prevail on its challenge to the Department's invocation of Exemption 7(A) and, therefore, the Institute is not entitled to attorney fees and costs.

### B. Statutory Time Period

The Article III requirements for a specific FOIA request claim and a pattern or practice claim differ from each other. Hajro v. U.S. Citizenship & Immigr. Servs., 811 F.3d 1086, 1102-03 (9th Cir. 2016). The Ninth Circuit recognizes "two separate claims that complainants can bring against an agency under FOIA." Id. First, a plaintiff can bring suit that attacks a specific agency action for (1) "improperly" (2) "withheld" (3) "agency records." Id. at 1103 (quoting Kissinger v. Reps. Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980)). "For specific FOIA request claims, after the agency produces all non-exempt documents and the court confirms the agency's proper invocation of an exemption, the specific FOIA claim is moot because the injury has been remedied." Hajro, 811 F.3d at 1103 (citation omitted).

Second, a plaintiff may assert a FOIA pattern or practice claim, which is a "claim that an agency policy or practice will impair the party's lawful access to information in the future." Id. (citation omitted) (emphasis in original); see e.g., Mayock v. Nelson, 938 F.2d 1006 (9th Cir. 1991) (recognizing a pattern or practice claim for unreasonable delay in responding to FOIA requests).

Where a plaintiff alleges a FOIA pattern or practice violation and seeks

declaratory or injunctive relief, regardless of whether the specific FOIA requests have been mooted, a plaintiff has shown injury in fact if he demonstrates the three following prongs: "(1) the agency's FOIA violation was not merely an isolated incident, (2) the plaintiff was personally harmed by the alleged policy, and (3) the plaintiff himself has a sufficient likelihood of future harm by the policy or practice." Hajro, 811 F.3d at 1103. "In other words, a pattern or practice claim is not necessarily mooted by an agency's production of documents." Id.; Payne Enters., Inc., 837 F.2d at 491 (holding that a pattern or practice claim is viable "[s]o long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials"). The Supreme Court has held that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief. . .if unaccompanied by any continuing, present adverse effects." Lyons, 461 U.S. at 102 (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)). Because FOIA's prescribed relief is injunctive or declaratory, generally a plaintiff alleging a pattern or practice claim under FOIA must also meet this future harm requirement. See 5 U.S.C. § 552(a)(4)(B). Moreover, because the Institute seeks injunctive relief, the Institute must show a likelihood of future harm caused by the policy or practice. Lyons, 461 U.S. at 105.

Additionally, in its complaint, a plaintiff must give the defendant fair notice of its claims and the grounds upon which its claims rest. Fed. R. Civ. P. 8; Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968 (9th Cir. 2006). Rule 8's pleading standard is "liberal," but still requires that the defendant receives notice as to what is at issue in the case. Id.; Am. Timber & Trading Co. v. First Nat'l Bank of Oregon, 690 F.2d 781, 786 (9th Cir. 1982). "[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings." Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006). If a plaintiff does not plead a claim in its complaint, then it is "not properly before the district court, and fails." Earth Island Inst. v. U.S. Forest Serv., 87 F.4th 1054, 1073 (9th Cir. 2023) (To hold the [defendant] responsible for predicting an

unalleged claim would be to expect the [defendant]. . .to act as mind readers and foresee all possible unalleged claims that may fall under a complaint.").

In this case, as the Department points out, neither the Institute's Amended Complaint nor the Institute's Motion for Summary Judgment alleges a pattern or practice violation. (Doc. 50 at 8); (see Docs. 14; 18). The Institute alleged in its Reply for the first time that the Department engaged in a pattern or practice violation of FOIA's time limits. (Doc. 26 at 3). The Institute contends that in its Amended Complaint it stated a pattern and practice claim when it stated that the Department sent out the "[a]cknowledgement [that] advised that the current average processing time. . .is 185 business days." (Docs. 51 at 13; 14 at 4).

The Court finds that the Institute's argument that it stated a pattern or practice claim in its Amended Complaint fails. Nothing even remotely resembling a "pattern or practice" claim appears within the four corners of the Institute's Complaint. In fact, the phrase "pattern or practice" does not appear anywhere in Plaintiff's Amended Complaint. (See Doc. 14). It is established law that if a plaintiff does not plead a claim in its complaint, then it is "not properly before the district court, and fails." Earth Island Inst., 87 F.4th at 1073. Thus, the Court declines to grant the Institute declaratory relief that the Department failed to respond within FOIA's statutory time limits based on a pattern and practice violation.

## IV.    CONCLUSION

For the preceding reasons, the Court grants in-part and denies in-part the parties' cross-motions for summary judgment (Docs. 18, 22). The Court grants the Institute's Motion on the Department's withholdings under the deliberative process privilege for any notes or materials for press briefings or draft press statements that are not also exempted under the attorney-client privilege, the withheld email subject lines not also exempted under the attorney-client privilege; and any response to an inquiry from U.S. Senator Kyrsten Sinema's staff. (Doc. 18). The Court denies the remainder of the Institute's claims. (Id.)

1    Accordingly, for the reasons set forth,

2    **IT IS ORDERED granting in-part** and **denying in-part** Plaintiff's Motion for

3    Summary Judgment. (Doc. 18).

4    **IT IS FURTHER ORDERED granting in-part** and **denying in-part**

5    Defendant's Cross-Motion for Summary Judgment. (Doc. 22).

6    **IT IS FURTHER ORDERED directing** Defendant to release the following to

7    Plaintiff: any notes or materials for press briefings or draft press statements in Docs. 1, 2,

8    3, 61, and 101; the email subject lines in Docs. 5 and 11; and any response to an inquiry

9    from U.S. Senator Kyrsten Sinema's staff in Doc. 95.

10    **IT IS FURTHER ORDERED denying** Plaintiff's request for attorney fees.

11    **IT IS FURTHER ORDERED directing** the Clerk of Court to enter judgment

12    accordingly and terminate this case.

13    Dated this 25th day of February, 2026.

14

15

16                                        Stephen M. McNamee
                                          Senior United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28